## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

THEODORE FEDEROFF, ET AL.,    :
individually and on behalf of all others    :
similarly situated,    :
    :
      Plaintiffs,    :
    :
    v.    :   No. 4:21-CV-01903
    :
GEISINGER CLINIC, ET AL.    :
    :
    Defendants.    :

## DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' SECOND AMENDED COMPLAINT FOR INJUNCTIVE RELIEF

Defendants, Geisinger Clinic, Geisinger Medical Center, Geisinger Health Plan, Geisinger Lewistown Hospital, Geisinger Wyoming Valley Medical Center, Geisinger System Services, Geisinger Health System, Geisinger Bloomsburg Hospital, Geisinger Community Medical Center, Geisinger Pottsville Cancer Center, Geisinger Hazelton Cancer Center, Geisinger Mail Order Pharmacy, West Shore Advanced Life Support Services, Inc., and Geisinger System Financial Edits (hereinafter, collectively "Geisinger" or "Defendants"), by and through their attorneys, Buchanan Ingersoll & Rooney PC, hereby submit this Brief in Opposition to Plaintiffs' Second Amended Complaint for Preliminary Injunction.  (Doc 14).

# TABLE OF CONTENTS

I.    PROCEDURAL HISTORY ......................................................................1

II.   STATEMENT OF FACTS ....................................................................1

III.  QUESTIONS PRESENTED ..................................................................6

    A.   Whether Plaintiffs' established the requisite elements to obtain a
         preliminary injunction? ..............................................................6

IV.  ARGUMENT ........................................................................................6

    A.   Plaintiffs Cannot Demonstrate Irreparable Harm .................................7

         1.   Loss of Employment is Not Irreparable Harm ...........................8

         2.   Constitutional Claims Alone are Not Enough for
             Irreparable Harm ..................................................................10

    B.   Plaintiffs Are Not Likely to Succeed on Any of Their Claims ............11

         1.   No Likelihood of Success on the Merits of their Equal
             Protection Clause Claim. ........................................................11

         2.   No Likelihood of Success on the Merits of their
             Religious Accommodation Claims ..........................................13

             a.   Failure to Exhaust Administrative Remedies ................14

             b.   No Likelihood of Success on the Merits of the
                  Title VII claims ...............................................................17

         3.   Plaintiffs Have Not Shown They Have Sincerely Held
             Religious Beliefs in Conflict with The Testing Regimen ........18

         4.   Defendants Made Good-Faith Efforts to Reasonably
             Accommodate Plaintiffs ........................................................19

         5.   Plaintiffs' Exemption Requests from COVID-19 Testing
             Would Cause Undue Hardship .................................................20

    C.   Remaining Injunction Factors Favor Geisinger's Testing as the
         Accommodation .......................................................................21

V.   CONCLUSION ...................................................................................22

# TABLE OF AUTHORITIES

## Cases

*Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421 (3d Cir. 1994) ................................................................................................................6

*Angstadt ex rel. Angstadt v. Midd-West Sch.*, 182 F. Supp. 2d 435 (M.D. Pa. 2002) ................................................................................................................7

*Bacon v. Woodward*, 2021 WL 5183059 (E.D. Wash. Nov. 8, 2021) ............ 10, 16

*Bailey v. Delta Air Lines, Inc.*, 722 F.2d 942 (1st Cir. 1983) .................................17

*Beckerich v. St. Elizabeth Med. Ctr.*, 2021 WL 4398027 (E.D. Ky. Sept. 24, 2021) ........................................................................................... 9, 13, 16

*Blum v. Yaretsky*, 457 U.S. 991 (1982) ................................................................12

*Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288 (2001)....11

*Broderick v. Associated Hosp. Serv. of Phila.*, 536 F.2d 1 (3d Cir. 1976) ..............13

*Brown v. Children's Hosp. of Phila.*, 794 Fed. Appx. 226 (3d Cir. 2020) ..............17

*Brown v. Philip Morris Inc.*, 250 F.3d 789 (3d Cir. 2001) ......................................12

*Continental Grp., Inc. v. Amoco Chems. Corp.*, 614 F.2d 351 (3d Cir. 1980)..........7

*David Sambrano et al. v. United Airlines, Inc.*, 2021 WL 5178829 (N.D. Tex. Nov. 8, 2021) ..............................................................................................10

*Doe v. Mills*, 2021 WL 5027177 (U.S., Oct. 29, 2021) ..........................................16

*Does 1-6 v. Mills*, 2021 WL 4860328 (1st Cir. Oct. 19, 2021) ................... 9, 16, 17

*ECRI v. McGraw-Hill, Inc.*, 809 F.2d 223 (3d Cir. 1987) ........................................7

*Fallon v. Mercy Cath. Med. Ctr.*, 877 F.3d 487 (3d Cir. 2017) .............................17

*Fort Bend Cty. v Davis*, 139 S. Ct. 1843 (2019) ....................................................14

*Geerlings v. Tredyffrin/Easttown Sch. Dist.*, 2021 WL 4399672 (E.D. Pa. Sept. 27, 2021) ........................................................................................................19

*Harsman v. Cincinnati Children's Hosp. Med. Ctr.,* 2021 WL 4504245 (S.D. Ohio Sep. 30, 2021)..................................................................................................9

*Hickman v. Amazon Fulfillment*, 662 F. App'x 176 (3d Cir. 2016).........................14

*Hodge v. Paoli Mem'l Hosp.*, 576 F.2d 563 (3d Cir. 1978) ....................................12

*Hohe v. Casey,* 868 F.2d 69, 73 (3d Cir.), cert. denied, 493 U.S. 848, 110 S.Ct. 144, 107 L.Ed.2d 102 (1989)..........................................................................................10

*Holiday Inns of Am., Inc. v. B&B Corp.*, 409 F.2d 614, (3d Cir. 1969)...................7

*In re Arthur Treacher's Franchise Litigation*, 689 F.2d 1137 (3d Cir. 1982) ..........8

*Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797 (3d Cir. 1989) ........8

*Johnson v. Brown*, 2021 WL 4846060 (D. Or. Oct. 18, 2021).................................9

*Johnson v. Pa. Dep't of Educ.*, 2020 WL 1435170 (ED Pa. Mar. 24, 2020)...........14

*Lugar v. Edmonson Oil Co.,* 457 U.S. 922 (1982) ..................................................12

*Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921 (1974) .......................13

*Marxe v. Jackson*, 833 F.2d 1121 (3d Cir. 1987) .....................................................8

*Miller v. Port Auth. of N.Y. & N.J.*, 351 F. Supp. 3d 762 (D. N.J. 2018)...............20

*Morton v. Beyer,* 822 F.2d 364 (3d Cir. 1987) ..........................................................8

*Naccarati v. Wilkins Twp., Pa.,* 846 F. Supp. 405 (W.D. Pa. 1993) ........................8

*Oberheim v. Bason*, 2021 WL 4478333 (M.D. Pa. Sept. 30, 2021)....................7, 21

*Prof'l Ins. Agents Ass'n v. Chronister*, 155 Pa. Commw. 652, 625 A.2d 1314 (1993)(citations omitted) ..........................................................................................11

*Sampson v. Murray*, 415 U.S. 61, 94 S. Ct. 937, 39 L. Ed. 2d 166 (1974).........8, 16

*Schneller v. Prospect Park Nursing & Rehab. Ctr.*, 2009 WL 1838337 (E.D. Pa. June 25, 2009)........................................................................................................13

*Singh v. Sch. Dist. of Philadelphia,* 2010 WL 3220336 (E.D. Pa. Aug. 11, 2010)...8

*Stampone v. Freeman Decorating Co.*, 196 Fed. Appx. 123 (3d Cir. 2006)...........14

iii

*Together Employees et al. v. Mass General Brigham Inc.*, 2021 WL 5234394 (D. Mass. Nov. 4, 2021)..............................................................................................10

*United States v. Bell*, 238 F. Supp. 2d 696 (M.D. Pa. 2003) ....................................6

*United States v. Pennsylvania*, 533 F.2d 107 (3d Cir. 1976)....................................7

*Wagner v. Taylor*, 836 F.2d 566 (App. D.C. 1987)................................................15

*Webb v. City of Philadelphia*, 562 F.3d 256 (3d Cir. 2009)............................ 18, 20

*Wise v. Inslee*, 2021 WL 4951571 (E.D. Wash. Oct. 25, 2021) ........................9, 16

**Statutes**

42 U.S.C. § 2000e-5(e) ...........................................................................................17

43 P.S. §962 ............................................................................................................17

*Unpublished cases attached as Exhibit E in compliance with L.R. 7.8.*

## I.   <u>PROCEDURAL HISTORY</u>

On November 8, 2021, Plaintiffs initiated this litigation by filing a purported Class Action Complaint for Injunctive Relief.  (Doc. 1.)  In less than ten days, Plaintiffs filed two amended complaints, with the Second Amended Complaint[1] withdrawing a number of Plaintiffs' original constitutional claims and leaving the following Counts:

Count I – Religious Discrimination

Count II – Equal Protection Clause

Count III – Failure to provide Reasonable Accommodation

(Doc. 14.)

This Court held a Conference on November 15, 2021, and issued an Order on that same date directing the Parties to submit briefing by 4:00 p.m., Thursday, November 18, 2021. (Doc. 12.)  Defendants timely submit this Brief.

## II.   <u>STATEMENT OF FACTS</u>

Geisinger provides state-of-the art medical care and is a leader in combating the COVID-19 pandemic.  Relying on the knowledge of its medical experts,

---

[1] On November 17, 2021, Plaintiffs filed their Second Amended Complaint.  This amended pleading violates Fed.R.Civ.P. 15, as Plaintiffs' failed to obtain consent from Defendants or leave of Court.  Defendants respectfully reserve their right to challenge the new facts, parties, and legal theories added to this improper pleading.

Geisinger has provided care to thousands of Pennsylvanians dealing with COVID-19.

As part of its role on the forefront of the battle against COVID-19, Geisinger adopted a mandatory COVID-19 Vaccination Policy for its employees (hereinafter, "Policy"). (Doc. 14, at ¶126.) Geisinger developed and implemented the Policy in conjunction with the advice of a team of multi-disciplinary medical professionals on how to best mitigate the impact of COVID-19 on Geisinger's patients, staff, and community. (Declaration of Becky Miller, attached as Exhibit "A", at ¶9.)

The Policy was implemented, in part, due to recommendations by the Centers for Disease Control and Prevention ("CDC") and the Pennsylvania Department of Health on vaccine safety and effectiveness. (*Id*., at ¶10). Geisinger also adopted the Policy, in part, due to concern for the thousands of patients it treats each day, many of which are immunocompromised, susceptible, and at higher risk for severe complications with COVID-19. (*Id*., at ¶11). Additionally, the benefits of vaccinating healthcare workers against COVID-19 have been demonstrated in large scale studies and, in fact, Geisinger published data demonstrating a correlation with vaccination and decreasing rates of infection amongst its healthcare personnel. (Declaration of Stanley Martin, M.D., attached as Exhibit "B", at ¶8).

The Policy, provided to employees on August 25, 2021, requires Geisinger employees, as a condition of employment, to become fully vaccinated by

November 1, 2021. (Exhibit A, at ¶15). The Policy provides for exemptions, including exemptions for medical or religious reasons. (*Id.*, at ¶16). Employees seeking such exemptions were required to submit a form, as well as any applicable supportive documentation, utilizing an electronic portal by September 10, 2021. (*Id.*, at ¶18). Thereafter, Geisinger engaged in an individualized interactive process with each employee, which, if necessary, included obtaining additional or clarifying information to evaluate and appropriately respond to each request. (*Id.*, at ¶21).

As research and the experience of Geisinger's physicians confirmed that unvaccinated individuals were the highest source of new infection and spread of COVID-19, Geisinger evaluated all possible accommodation options for those employees seeking medical or religious exemptions to the vaccine. (Exhibit B, at ¶¶9, 11). It was determined that, short of vaccination, the safest and least invasive approach to mitigating further spread was periodic testing. (*Id.*, at ¶13). Accordingly, Geisinger determined that the appropriate accommodation for those seeking exemptions would be to undergo periodic testing. (Exhibit A, ¶24). This accommodation aligns with EEOC Guidance:

> An employee who does not get vaccinated due to…a sincerely held religious belief...may be entitled to a reasonable accommodation that does not pose an undue hardship on the operation of the employer's business. For example, as a reasonable accommodation, an unvaccinated employee entering the workplace might…**get periodic tests for COVID-19**...

*See* EEOC Guidelines, at K.2. https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws?utm_content=&utm_medium=email&utm_name=&utm_source=govdelivery&utm_term=# (emphasis added)(last accessed Nov. 17, 2021).

Additionally, periodic testing allows for the identification of individuals in the early stages of the illness when they are more likely to be contagious since, at that time, viral RNA levels from upper respiratory specimens are the highest.  (Exhibit B, ¶13).  These individuals may not even know they are infected because they are either asymptomatic or pre-symptomatic.  On average, individuals infected with the delta variant[2] transmit the infection to 6-7 other individuals.  (*Id*., at ¶¶13-14).

By instituting a testing-based screening strategy, Geisinger would be able to identify asymptomatic/pre-symptomatic infections, helping to limit the spread of infections to its patients, workforce, and the community.  (*Id*., at ¶14).  Accordingly, starting the week of November 8, 2021, each employee individually granted an exemption from the vaccine – whether for medical or religious reasons – was notified that, as a reasonable accommodation, they would undergo periodic testing.[3]  (Exhibit A, at ¶¶23-24; Declaration of Stephanie Gryboski, attached hereto as Exhibit C, at ¶8).  Employees were able to respond to the notification and request clarification

---

[2] Currently, the delta variant makes up >99% of SARS-CoV-2 infections in Pennsylvania.  (Exhibit B, ¶14.)

[3] Geisinger tasked doctoral subject matter experts with its Diagnostic Medicine Institute to create a multi-disciplinary Diagnostic Medicine Team to evaluate and assess all possible testing options for safely and accurately testing Geisinger employees.  (*See* Declaration of Myra Wilkerson, MD, attached as Exhibit D.)

and, in fact, numerous employees outlined various objections to the testing. (Exhibit A, at ¶25). Each objection received by Geisinger was individually reviewed, assessed, and, after an interactive process, was individually responded to by Geisinger. (*Id*., at ¶¶26-28).

On November 9, 2021, the first day of results reporting, testing revealed 16 employees tested positive. (Exhibit C, at ¶10). Of those, 15 regularly work in public/patient facing roles at Geisinger, and 6 of the 16 did not report any symptoms. (*Id*., at ¶¶11-12). On the next two days of results reporting, 22 additional employees tested positive, and, of those, 10 did not report any symptoms. (*Id.*, ¶¶13-14.) Additionally, at least 11 of the 22 – including 6 not reporting any symptoms – regularly work in public/patient facing roles. (*Id*., at ¶15.)

Accordingly, 12 unvaccinated employees not reporting symptoms tested positive on the first three days of periodic testing. As a result, all 12 employees were immediately removed from the healthcare/workplace setting and quarantined – ensuring that they did not spread the virus. If not for the periodic testing, each of these unvaccinated employees would have entered the healthcare setting and likely spread the virus to patients, other healthcare workers, and/or those in the community. When considering the average infected individual spreads the infection to 6-7 others and that individuals are more likely to be contagious in the earlier stages of the illness, as discussed above, Geisinger's identifying of these 12 employees curtailed

the spread of the virus to between 72 and 84 individuals.   Accordingly, periodic testing is already creating significantly positive results.

## III.   QUESTIONS PRESENTED

**A.   Whether Plaintiffs' established the requisite elements to obtain a preliminary injunction?**

**Suggested Answer:  No**

## IV.   ARGUMENT

Injunctive relief is extraordinary and is only issued in limited circumstances. *Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1426-27 (3d Cir. 1994).  In determining whether to grant injunctive relief, the Third Circuit considers four factors: "(1) likelihood of success on the merits; (2) irreparable harm resulting from a denial of the relief; (3) the harm to the nonmoving party if relief is granted; and (4) the public interest." *United States v. Bell*, 238 F. Supp. 2d 696, 699 (M.D. Pa. 2003).  It is the moving party who bears the burden of satisfying these factors. *Id.*

The Honorable Matthew W. Brann recently explained the application of this standard and the key "gateway" factors:

> The Third Circuit specified that a party seeking a preliminary injunction must first demonstrate the following: (1) 'it can win on the merits (which requires a showing significantly better than negligible but not necessarily more likely than not),' and (2) 'it is more likely than not to suffer irreparable harm in the absence of

preliminary relief.'…'[i]f these gateway factors are met, a court then considers the remaining two factors and determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief.'

*Oberheim v. Bason*, 2021 WL 4478333 (M.D. Pa. Sept. 30, 2021).

## A.    Plaintiffs Cannot Demonstrate Irreparable Harm

"[A]n essential prerequisite to the grant of a preliminary injunction is a showing by the movant of irreparable injury *pendente lite* if the relief is not granted." *United States v. Pennsylvania*, 533 F.2d 107, 110 (3d Cir. 1976).  A preliminary injunction "may not be used simply to eliminate a possibility of a remote future injury." *Holiday Inns of Am., Inc. v. B&B Corp.*, 409 F.2d 614, 618 (3d Cir. 1969). "[T]he irreparable harm must be actual and imminent, not merely speculative." *Angstadt ex rel. Angstadt v. Midd-West Sch.*, 182 F. Supp. 2d 435, 437 (M.D. Pa. 2002).  "There must be a 'clear showing of immediate irreparable injury,' or a 'presently existing actual threat...'" *Continental Grp., Inc. v. Amoco Chems. Corp.*, 614 F.2d 351, 359 (3d Cir. 1980)(citations omitted).

Moreover, "[t]he 'requisite feared injury or harm must be irreparable – not merely serious or substantial,' and it 'must be of a peculiar nature, so that compensation in money cannot atone for it.'" *ECRI v. McGraw-Hill, Inc.*, 809 F.2d 223, 226 (3d Cir. 1987)(citations omitted). "[T]o demonstrate irreparable harm the plaintiff must demonstrate potential harm which cannot be redressed by a legal or

an equitable remedy…[t]he preliminary injunction must be the only way of protecting the plaintiff from harm." *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989). "The key word in this consideration is irreparable…the possibility that adequate compensatory or other corrective relief will be available at a later date…weighs heavily against a claim of irreparable harm." *Sampson v. Murray*, 415 U.S. 61, 90 (1974).

### 1.    *Loss of Employment is Not Irreparable Harm*

It is well established that termination of employment is not enough to provide the imminent irreparable harm required.  *Naccarati v. Wilkins Twp., Pa.,* 846 F. Supp. 405 (W.D. Pa. 1993); *Marxe v. Jackson*, 833 F.2d 1121, 1127 (3d Cir. 1987)(improper to grant an injunction to employee alleging retaliatory discharge under Title VII, even where the employee alleged a chilling effect on the ability to obtain cooperation of potential witnesses); *Morton v. Beyer,* 822 F.2d 364, 372 (3d Cir. 1987)(injury of suspension without pay insufficient to establish a preliminary injunction).

Furthermore, the Third Circuit has continually held that where the claimed injury actually constitutes a loss of money, the loss is capable of recoupment in an action at law.  *In re Arthur Treacher's Franchise Litigation*, 689 F.2d 1137, 1145 (3d Cir. 1982); *Singh v. Sch. Dist. of Philadelphia,* 2010 WL 3220336 (E.D. Pa. Aug.

11, 2010)(economic injuries suffered as a result of termination did not constitute irreparable harm as there was an alternative remedy available).

In addition to Third Circuit precedent, there has been a flurry of recent cases throughout the country addressing the "gateway factor" of irreparable harm in the context of COVID-19 mandates.  Almost, if not every, analogous case includes a holding that similarly situated individuals could ***not*** demonstrate irreparable harm:

- *Beckerich v. St. Elizabeth Med. Ctr.*, 2021 WL 4398027 at *6 (E.D. Ky. Sept. 24, 2021)(loss of employment, which is fully compensable by monetary damages, is not considered to be an irreparable injury);

- *Harsman v. Cincinnati Children's Hosp. Med. Ctr.,* 2021 WL 4504245, at *5, (S.D. Ohio Sep. 30, 2021)(threats to plaintiffs' careers, reputations, and the risk of bankruptcy or foreclosure are quintessentially compensable injuries, and are not irreparable);

- *Johnson v. Brown*, 2021 WL 4846060 at *20-21 (D. Or. Oct. 18, 2021)(fear of future harm in the form of loss of job and associated benefits is too speculative to support a claim for irreparable injury);

- *Does 1-6 v. Mills*, 2021 WL 4860328 (1st Cir. Oct. 19, 2021)(healthcare workers failed to demonstrate why they should be entitled to pre-termination relief despite their failure to exhaust, given that the loss of employment does not constitute irreparable injury);

- *Wise v. Inslee*, 2021 WL 4951571, at *5, 6, (E.D. Wash. Oct. 25, 2021)(loss of employment does not constitute irreparable harm);

- *Together Employees et al. v. Mass General Brigham Inc.*, 2021 WL 5234394 (D. Mass. Nov. 4, 2021)(no showing of irreparable injury sufficient in kind and degree to justify the disruption of the prescribed administrative process);

- *David Sambrano et al. v. United Airlines, Inc.*, 2021 WL 5178829 (N.D. Tex. Nov. 8, 2021)("…[p]laintiffs' request for the extraordinary remedy of a preliminary injunction to enjoin United from placing plaintiffs on unpaid leave…must be denied because [p]laintiffs do not clearly carry their burden to show they would suffer imminent, irreparable harm ...");

- *Bacon v. Woodward*, 2021 WL 5183059, at *5, (E.D. Wash. Nov. 8, 2021)(loss of employment does not constitute irreparable harm).

Here, Plaintiffs cannot establish the necessary irreparable harm to warrant a preliminary injunction.

## 2. *Constitutional Claims Alone are Not Enough for Irreparable Harm*

Plaintiffs allege one constitutional claim against Defendants.  To the extent Plaintiffs contend a constitutional violation automatically creates irreparable harm, Defendants disagree.  A violation of a constitutional right is not synonymous with the showing of the necessary irreparable harm. *Hohe v. Casey,* 868 F.2d 69, 73 (3d

Cir. 1989).  Additionally, as outlined below, Plaintiffs' sole constitutional claim fails as a matter of law, as it is well-settled that private employers, like Defendants, are *not* state actors and, thus, cannot be held liable for violations of employees' constitutional rights.

## B.    Plaintiffs Are Not Likely to Succeed on Any of Their Claims

Plaintiffs cannot establish a likelihood of success with respect to any of their claims.

### 1.    *No Likelihood of Success on the Merits of their Equal Protection Clause Claim.*

Plaintiffs' Fourteenth Amendment Equal Protection claim at Count II[4] cannot stand because Defendants are not state actors.[5]   A well-settled principle of constitutional law is that there exists "a line between state action subject to Fourteenth Amendment scrutiny and private conduct (however exceptionable) that is not." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 297

---

[4] Count I for "religious discrimination" initially cites Title VII, but then references Art. I. §3 of the Pennsylvania Constitution.  If Plaintiffs are seeking a claim under the state constitution, the cause of action also fails because Defendants are not state actors.  The Pennsylvania Supreme Court held that "the Declaration of Rights [contained in Article I of Pennsylvania's Constitution] is a limitation on the power of state government" and does not pertain to actions of private entities. *Prof'l Ins. Agents Ass'n v. Chronister*, 155 Pa. Commw. 652, 660, 625 A.2d 1314, 1318 (1993)(citations omitted).

[5] Plaintiffs' Second Amended Complaint also fails to state a claim for an Equal Protection violation.

11

(2001). Plaintiffs' claim must fail because their allegations are not related to any government action.

The state action requirement is "to assure that constitutional standards are invoked only when it can be said that the State is responsible for the specific conduct of which the plaintiff complains." *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982). The conduct of a private party is only "fairly attributable" to the state where: (1) the deprivation of a federal right is "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible"; and (2) "the party charged with the deprivation [is] a person who may fairly be said to be a state actor." *Lugar v. Edmonson Oil Co.,* 457 U.S. 922, 937 (1982); *Brown v. Philip Morris Inc*., 250 F.3d 789, 801 (3d Cir. 2001).

Plaintiffs fail to even attempt to articulate how Defendants are state actors. In fact, Plaintiffs acknowledge Geisinger acted independently "**[w]ithout any official mandate from the federal or state government**." (Doc. 14, at ¶1). Accordingly, there is no likelihood of success on the merits of Plaintiffs' constitutional claim, and, as such, injunctive relief is unwarranted.

In anticipation of an argument that government aid or regulation somehow transforms Geisinger into a state actor, there are numerous contrary holdings. *Hodge v. Paoli Mem'l Hosp*., 576 F.2d 563 (3d Cir. 1978)(private hospital's receipt of federal funds did not satisfy the §1983 state action requirement); *Blum*, at 1011–12

12

(1982)(nursing home was not a state actor even though 90% of residents received federal assistance); *Broderick v. Associated Hosp. Serv. of Phila.,* 536 F.2d 1 (3d Cir. 1976)(insurers were not state actors simply because the government regulates their industry); *Schneller v. Prospect Park Nursing & Rehab. Ctr.*, 2009 WL 1838337, at *6 (E.D. Pa. June 25, 2009)("[t]he fact that hospitals and nursing homes may be extensively regulated and may receive financial support from the government through Medicaid and Medicare does not make them state actors.").

In a recent case involving a hospital's vaccine mandate to its employees, a district court held "[p]laintiffs' attempts to turn [d]efendants into state actors, based on [p]laintiffs' counsel's statements during oral argument that a hospital can become a "quasi-state actor" by how much government funding it receives is unavailing.  Not only is such a claim in direct conflict with controlling precedent, [*Manhattan Cmty. Access Corp. v. Halleck*, 139 S.Ct. 1921, 1928,(1974)], [p]laintiffs have been unable to provide a case in support of that assertion.   For these reasons, [p]laintiffs' likelihood of success on the merits of their constitutional claims is virtually nonexistent, weighing heavily against granting injunctive relief." *Beckerich*, 2021 WL 4398027.

### 2.   *No Likelihood of Success on the Merits of their Religious Accommodation Claims*

Plaintiffs' failure to exhaust their administrative remedies is sufficient reason to deny Plaintiffs' preliminary injunction.  Additionally, Plaintiffs' Title VII claims

would not survive a Motion to Dismiss raising the defenses of failure to exhaust and/or failure to state a claim.

### a.    Failure to Exhaust Administrative Remedies

Plaintiffs admit they have not initiated or satisfied the administrative prerequisites for their Title VII claims. (Doc. 14, Prayer for Relief.)  For this reason alone, Plaintiffs' preliminary injunction should be denied.

Under Title VII, Plaintiffs are required to exhaust administrative remedies before proceeding in federal court by timely filing a discrimination charge with the EEOC and obtaining a Right to Sue Letter.  42 U.S.C. § 2000e-5(e); *Stampone v. Freeman Decorating Co.*, 196 Fed. Appx. 123, 125 (3d Cir. 2006).[6]

The exhaustion requirement under Title VII is "a processing rule, albeit a mandatory one, not a jurisdictional prescription delineating the adjudicatory authority of courts." *Fort Bend Cty. v Davis*, 139 S. Ct. 1843, 1851 (2019). The "mandatory" nature of the exhaustion requirement is "such that a court is required to enforce if…it is raised properly." *Johnson v. Pa. Dep't of Educ.*, 2020 WL 1435170, *5 at Fn 5 (ED Pa. Mar. 24, 2020).[7]

---

[6] Count I of Plaintiff's Second Amended Complaint added a citation to Pennsylvania's Human Relations Act at 43 P.S. §955(5)(f).  To the extent Plaintiffs are now attempting to maintain a claim under the PHRA, similar administrative prerequisites must be satisfied.  43 P.S. §962.

[7] Failure to exhaust is a basis for dismissal under Fed.R.Civ.P. 12(b)(6). *Hickman v. Amazon Fulfillment*, 662 F. App'x 176, 178-79 (3d Cir. 2016).

14

The issue of whether the Court can deny a motion for preliminary injunction solely on a plaintiff's failure to exhaust administrative remedies for Title VII claims appears to have never been resolved by the Third Circuit Court of Appeals.[8]  Upon review of recent vaccine mandate cases, where the plaintiffs sought an injunction and brought Title VII or similar employment claims, courts have taken different approaches to reach the same result – denying the injunction.  Courts: (1) denied injunction requests outright for failure to exhaust; (2) considered failure to exhaust a factor that cuts against the likelihood of success in denying injunctions; and (3) required a heightened standard of irreparable harm to disrupt Title VII's statutory scheme when considering injunctions. Adopting any of these frameworks would lead to the same result: denial of Plaintiffs' request for a preliminary injunction.

---

[8] Plaintiffs' Second Amended Complaint, without citation, asserts "the Supreme Court has recognized" that courts have judicial power to maintain a status quo by injunction pending review of an agency's action. (Doc. 14, ¶159).  Defendants assume this is Plaintiffs attempt to excuse their failure to follow the administrative requirements.  Plaintiffs then cite *Wagner v. Taylor*, 836 F.2d 566 (App. D.C. 1987). In *Wagner*, the Court noted a split among federal courts on whether the judiciary could grant an injunction while the prerequisite agency claim was pending. *Id*. at 571–572.  Ultimately, the Court believed it had the authority to issue an injunction while administrative matters were pending; however, the Court affirmed the denial of the preliminary injunction because the employee plaintiff could not establish irreparable harm.  *Id*. at 576.  Defendants are unaware of precedent from the Third Circuit Court of Appeals or the Supreme Court on the question of the injunction powers discussed in *Wagner*.  However, the question is moot due to the clear lack of irreparable harm or probability of success.

In the first approach outlined above, the Eastern District of Washington denied injunctions in two vaccine mandate cases involving employment claims, without analyzing the elements of the claims, because the plaintiffs failed to exhaust their administrative remedies. *Bacon*, 2021 WL 5183059; *Wise*, 2021 WL 4951571.

In the second approach, the Eastern District of Kentucky, in denying a preliminary injunction for a vaccine mandate case involving employment claims, noted that the plaintiffs' failure to exhaust administrative remedies "cut[s] against the likelihood of success on the merits from the outset." *Beckerich*, 2021 WL 4398027 at *8-9.

The third approach within recent vaccine mandate cases occurred in the First Circuit Court of Appeals, where the court affirmed the denial of a request to enjoin Maine's vaccine mandate because the plaintiffs "failed to demonstrate why they are entitled to pre-termination relief despite their failure to exhaust, given that the loss of employment 'does not usually constitute irreparable injury' except in 'the genuinely extraordinary situation' going beyond mere cases of 'insufficiency of savings or difficulties in immediately obtaining other employment.'" *Doe v. Mills*[9], 2021 WL 4860328 at *31 (1st Cir. Oct. 19, 2021)(quoting *Sampson*, 415 U.S. at 90-91, at Fn 68. The Court went on to state:

---

[9] *Doe v. Mills*, 2021 WL 5027177 (U.S., Oct. 29, 2021) (injunction denied again by the Supreme Court).

> At a minimum, an aggrieved person seeking preliminary relief outside the statutory scheme for alleged Title VII violations would have to make a showing of irreparable injury sufficient in kind and degree to justify the disruption of the prescribed administrative process.

*Mills*, 2021 WL 4860328 at *31.

Regardless of the approach, the result is the same. Plaintiffs' failure to comply with their prerequisite duties denotes their inability to achieve success on the merits of their Title VII claims.

### b. No Likelihood of Success on the Merits of the Title VII claims[10]

Even if this Court ignored Plaintiffs' failure to exhaust, Plaintiffs still cannot show a likelihood of success on the merits of their Title VII claims. To establish a *prima facie* case of failure to accommodate their religious beliefs, Plaintiffs must show they: (1) held a sincere religious belief that conflicted with a job requirement; (2) informed their employers of the conflict; and (3) suffered an adverse employment action for failing to comply with the conflicting requirement. *Fallon v. Mercy Cath. Med. Ctr.,* 877 F.3d 487, 490 (3d Cir. 2017).

To state a claim for violation of Title VII, it is insufficient for Plaintiffs to merely hold a sincere opposition to COVID-19 testing; rather, the individuals must

---

[10] Count I titled "Religious Discrimination" and Count III titled "Failure to Provide Reasonable Accommodation" each rely upon Title VII and, for the sake of judicial economy, Defendants jointly address each Count within this Section.

show that the opposition is a **religious** belief.  *Brown v. Children's Hosp. of Phila.*, 794 Fed. Appx. 226, 227 (3d Cir. 2020)("[i]n assessing whether beliefs are religious, we consider whether they address fundamental and ultimate questions having to do with deep and imponderable matters, are comprehensive in nature, and are accompanied by certain formal and external signs.")(internal quotations omitted).

If Plaintiffs can establish a *prima facie* case, the burden shifts to Defendants "to show either [they] made a good-faith effort to reasonably accommodate the religious belief, or such an accommodation would work an undue hardship upon the employer and its business." *Webb v. City of Philadelphia*, 562 F.3d 256, 259 (3d Cir. 2009).

With the above framework in mind, Plaintiffs' claims fail, as detailed below.

### 3. *Plaintiffs Have Not Shown They Have Sincerely Held Religious Beliefs in Conflict with The Testing Regimen*

While Plaintiffs baldly allege "sincerely held beliefs", their beliefs are not "religious", but rather scientific or medical.   The majority of the "Factual Allegations" section involves Plaintiffs' medical, scientific, or political objections to the tests.  (Doc. 14, at ¶¶126–151).   The bulk of Plaintiffs' allegations attack the efficacy of testing under the heading "PCR tests are not effective in detecting the SARS-COV-2 Virus." *Id.*

18

After spending the entirety of their pleading discussing reliability and ingredients of the tests, Plaintiffs then make a conclusory allegation that they "informed defendant that its policy was in conflict with their sincerely held religious beliefs." (Doc. 14, ¶165).  Plaintiffs do not articulate which religion(s) or religious tenant(s) conflict(s) with testing.  Vague inferences that perceived medical harm somehow violates religious practices are insufficient.  *Geerlings v. Tredyffrin/Easttown Sch. Dist.,* 2021 WL 4399672 at *20-21, (E.D. Pa. Sept. 27, 2021)(denying injunction filed by parents who opposed mask mandate and noting concern that a treatment may do more harm than good is a medical belief, not a religious one and that "it would be a step to far to count everything [a plaintiff] believes about heathy living as a religious practice".)

Accordingly, Plaintiffs cannot establish sincerely held religious beliefs with respect to testing and, thus, have no likelihood of success.

### 4. *Defendants Made Good-Faith Efforts to Reasonably Accommodate Plaintiffs*

Plaintiffs do not dispute Defendants initially accommodated them by granting religious exemptions to their Mandatory Vaccine Policy. (Doc. 14 at ¶129).  It is also indisputable that Defendants engaged in a robust evaluation of accommodation options as well as an interactive process with Plaintiffs and other employees on an individualized basis in accordance with the requirements under Title VII. (Exhibit A, ¶¶18-32(discussing Core Vaccine Exemption Team specifically developed to

19

individually assess each exemption request (for vaccine or testing) and to interact with each employee to tailor potential accommodation(s)); *see also* Exhibit D, ¶¶ 9-13(discussing extensive review of testing options by multidisciplinary Diagnostic Medicine Team)).

### 5. *Plaintiffs' Exemption Requests from COVID-19 Testing Would Cause Undue Hardship*

Assuming, *arguendo*, Plaintiffs can carry their burdens to this point in the analysis, Defendants have shown that permitting exemptions from testing would pose an undue hardship.  The threshold of undue hardship is not high – an accommodation constitutes an "undue hardship" if it would pose more than a *de minimis* burden on the employer. *Webb,* 562 F.3d at 259-260.   In addition, "employers must be given leeway to plan their business operations and possible accommodative options in advance, relying on an accommodation's predictable consequences along the way." *Miller v. Port Auth. of N.Y. & N.J.*, 351 F. Supp. 3d 762, 789 (D. N.J. 2018).  Such leeway for business planning is all the more critical for Defendants – a frontline hospital system trying to navigate the COVID-19 pandemic.

The record shows that Geisinger made its decision after much deliberation about the dangers presented from COVID-19 and how to mitigate its deadly impact. Geisinger relied on its experts at the forefront of the pandemic and concluded

20

vaccination was critical for safety and that, in the absence of vaccination, periodic testing was the best noninvasive option.  (*See* Exhibit B.)  Geisinger also relied on the advice of the CDC and the EEOC.[11]  Research further proved that failure to test unvaccinated individuals risks increased infection rates and permitted the highest source of infections – unvaccinated individuals – to go on unabated.  *Id*.  Moreover, Geisinger faced a staffing issue related to COVID-19 that threatened workplace safety and Geisinger's ability to provide quality care during a health crisis.  (Exhibit A, at ¶13.)  Finally, the reported results from the testing has already seen significantly positive results.  (Exhibit D, at ¶¶10-16.)

Simply put, Geisinger easily meets the *de minimis* standard and, thus, forcing Geisinger to abandon its testing indisputably constitutes an undue hardship.

### C.    Remaining Injunction Factors Favor Geisinger's Testing as the Accommodation

Plaintiffs' request for a preliminary injunction cannot pass the two "gateway" factors.  In the event this Court disagrees, the final required factors – regarding the harm to the nonmoving party if relief is granted and the public interest – both favor Defendants.  As set forth in the Declarations attached hereto, Defendants' experts determined that COVID-19 presents a danger to patients, healthcare workers and the

---

[11] An entity has "a right to rely on the recommendations given by reputable public health authorities…when deciding how to combat COVID-19, which has caused the worst public health crisis in a century.  *Oberheim,* 2021 WL 374648 at *10.

community.  Additionally, Defendants' noted staffing issues caused by COVID-19 and with a direct connection to unvaccinated employees. (*See, generally,* Exhibits A-B).  As such, the granting of this injunction would cause significant harm to Defendants.  Moreover, based on the reported results from the first three days of testing alone, the mitigation efforts are already creating extremely positive results for Geisinger's patients and staff as well as the public.

Furthermore, every reputable public health entity (including the CDC and Department of Health), as well as the EEOC have recommended in some respect the mitigation factors Geisinger chose to implement.  As such, the public interests absolutely favor Geisinger as it strives to continue to provide a safe environment for vulnerable patients, its workforce, and the public that relies on Geisinger amidst an ongoing global pandemic that has resulted in more than five million deaths worldwide – and counting.

## V.    <u>CONCLUSION</u>

To that end, this Court must deny Plaintiffs Preliminary Injunction request and Dismiss the Second Amended Complaint as a matter of law.

Respectfully submitted,

BUCHANAN INGERSOLL & ROONEY PC

By:  */s/Anthony (T.J.) Andrisano*
    Anthony (T.J.) Andrisano, Esq. (PA 201231)
    Jacob J. Sulzer, Esq. (PA 313089)
    409 North Second Street, Suite 500
    Harrisburg, PA  17101
    Telephone: (717) 237-4800
    Fax: (717) 233-0852
    e-mail:  anthony.andrisano@bipc.com
    email:  jacob.sulzer@bipc.com
    *Attorneys for Defendants*

Date:  November 18, 2021

**CERTIFICATE OF COMPLIANCE**
**<u>IN ACCORDANCE WITH LOCAL RULE 7.8(b)(2)</u>**

It is hereby certified that Defendants' Response in Opposition to Plaintiffs'

Second Amended Complaint contains 4,975 words (exclusive of tables of contents

and authorities, signatures, and this certificate), according to the word processing

system used to prepare it, and that the brief therefore complies with the Local Rule.

<u>*/s/Anthony (T.J.) Andrisano*</u>

24

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and complete copy of the foregoing document was

served *via* ECF Filing on the following party:

Gregory A. Stapp, Esquire
Stapp Law, L.L.C.
153 West Fourth Street, Suite 6
Williamsport, PA 17701
<u>gstapp@stapplaw.net</u>


*/s Krista M. Kiger*
Krista M. Kiger
Paralegal


Dated:  November 18, 2021