## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

THEODORE FEDEROFF, ET AL.,   :
individually and on behalf of all others :
similarly situated,      :
           :
   Plaintiffs,     :
           :
  v.         :  No. 4:21-CV-01903
           :
GEISINGER CLINIC, ET AL.    :
           :
   Defendants.    :

## **DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS**

Defendants, Geisinger Clinic, Geisinger Medical Center, Geisinger Health Plan, Geisinger Lewistown Hospital, Geisinger Wyoming Valley Medical Center, Geisinger System Services, Geisinger Health System, Geisinger Bloomsburg Hospital, Geisinger Community Medical Center, Geisinger Pottsville Cancer Center, Geisinger Hazelton Cancer Center, Geisinger Mail Order Pharmacy, West Shore Advanced Life Support Services, Inc., and Geisinger System Financial Edits (hereinafter, collectively "Geisinger" or "Defendants"), by and through their attorneys, Buchanan Ingersoll & Rooney PC, hereby submit this Statement of Undisputed Material Facts in support of their Motion for Summary Judgment.

### I. **Procedural History**

1. On November 8, 2021, Plaintiffs initiated this litigation by filing a purported Class Action Complaint for Injunctive Relief.  *See* Doc. 1.

2.     In less than ten days, Plaintiffs filed two amended complaints, with the Second Amended Complaint withdrawing a number of Plaintiffs' original constitutional claims and leaving the following Counts:

i.     Count I – Religious Discrimination

ii.    Count II – Equal Protection Clause

iii.   Count III – Failure to provide Reasonable Accommodation

*See* Doc. 14.

3.     After the proceeding on November 19, 2021, regarding Plaintiffs' motion for preliminary injunction/temporary restraining order, the Court issued an order and opinion denying Plaintiffs' motion. *See* Doc. 24.

## II.    Geisinger's COVID-19 Vaccination Policy Complies with Title VII and EEOC Guidance

4.     As part of its role on the forefront of the battle against COVID-19, Geisinger adopted a mandatory COVID-19 Vaccination Policy for its employees (hereinafter, "Policy").  *See* Doc. 14, at ¶126.

5.     Geisinger developed and implemented the Policy in conjunction with the advice of a team of multi-disciplinary medical professionals on how to best mitigate the impact of COVID-19 on Geisinger's patients, staff, and community. *See* Declaration of Becky Miller, attached as Exhibit A, at ¶9.

6.     The Policy was implemented, in part, due to recommendations by the Centers for Disease Control and Prevention ("CDC") and the Pennsylvania Department of Health on vaccine safety and effectiveness. *Id.*, at ¶10.

7.     Geisinger also adopted the Policy, in part, due to concern for the thousands of patients it treats each day, many of whom are immunocompromised, susceptible, and at higher risk for severe complications from COVID-19 infection. *Id.*, at ¶11.

8.     Additionally, the benefits of vaccinating healthcare workers against COVID-19 have been demonstrated in large scale studies and, in fact, Geisinger published data demonstrating a correlation with vaccination and decreasing rates of infection amongst its healthcare personnel. *See* Declaration of Stanley Martin, M.D., attached as Exhibit B, at ¶8.

9.     The Policy, provided to employees on August 25, 2021, requires Geisinger employees, as a condition of employment, to become fully vaccinated by November 1, 2021. *See* Exhibit A, at ¶15.

10.     The Policy provides for exemptions, including exemptions for medical or religious reasons. *Id.*, at ¶16.

11.     Employees seeking such exemptions were required to submit a form, as well as any applicable supportive documentation, utilizing an electronic portal by September 10, 2021. *Id.*, at ¶18.

12.     Thereafter, Geisinger engaged in an individualized interactive process with each employee, which, if necessary, included obtaining additional or clarifying information to evaluate and appropriately respond to each request. *Id.*, at ¶21.

13.     As research and the experience of Geisinger's physicians confirmed that unvaccinated individuals were the highest source of new infection and spread of COVID-19, Geisinger evaluated all possible accommodation options for those employees seeking medical or religious exemptions to the vaccine. *See* Exhibit B, at ¶¶9, 11.

14.     It was determined that, short of vaccination, the safest and least invasive approach to mitigating further spread was periodic testing. *Id.*, at ¶13.

15.     Accordingly, Geisinger determined that the appropriate accommodation for those seeking exemptions would be to undergo periodic testing. *See* Exhibit A, ¶24.

16.     This accommodation aligns with EEOC Guidance:

> An employee who does not get vaccinated due to…a sincerely held religious belief...may be entitled to a reasonable accommodation that does not pose an undue hardship on the operation of the employer's business. For example, as a reasonable accommodation, an unvaccinated employee entering the workplace might…**get periodic tests for COVID-19**...

*See* EEOC Guidelines, at K.2. https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-

laws?utm_content=&utm_medium=email&utm_name=&utm_source=govdelivery &utm_term=# (emphasis added)(last accessed Nov. 17, 2021).

17.     Starting the week of November 8, 2021, each employee who was individually granted an exemption from the vaccine – whether for medical or religious reasons – was notified that, as a reasonable accommodation, they would undergo periodic testing.  *See* Exhibit A, at ¶¶23-24; Declaration of Stephanie Gryboski, attached hereto as Exhibit C, at ¶8.

18.     Geisinger tasked doctoral subject matter experts with its Diagnostic Medicine Institute to create a multi-disciplinary Diagnostic Medicine Team to evaluate and assess all possible testing options for safely and accurately testing Geisinger employees.  (*See* Declaration of Myra Wilkerson, MD, attached as Exhibit D.)

19.     Employees were able to respond to the notification and request clarification and, in fact, numerous employees outlined various objections to the testing.  *See* Exhibit A, at ¶25.

20.     Each objection received by Geisinger was individually reviewed, assessed, and, after an interactive process, was individually responded to by Geisinger. *Id*., at ¶¶26-28.

### III.   Geisinger is Not a State Actor and Plaintiffs' Equal Protection Claim Fails as a Matter of Law

21.    Plaintiffs have pled no facts in their Second Amended Complaint, or otherwise can set forth any facts to establish that Geisinger is a state actor. *See* Doc. 14, generally; *see also* Doc. 24 at Pages 7-8; *see also* Pennsylvania Corporate filings and information, attached as Exhibit E.

22.    Plaintiffs "do not have a bona fide constitutional claim." Doc. 24 at Page 9.

23.    "Geisinger is not a state actor." *Id.*

24.    Geisinger "therefore cannot violate the [Plaintiffs'] rights under the Free Exercise and Equal Protection Clauses." *Id.*

### IV.   Plaintiffs Cannot Make Out a *Prima Facie* Case for Religious Discrimination or Failure to Accommodate Based on Religion as a Matter of Law

#### (a)   Geisinger Accommodated Plaintiffs' Religious Exemption Requests to its Vaccine Policy

25.    Geisinger accommodated Plaintiffs by granting religious exemptions to its Mandatory Vaccine Policy. *See* Doc. 14 at ¶129.

#### (b)   With Respect to Testing, Plaintiffs' Objections are not based on Sincerely Held Religious Beliefs

26.    Plaintiffs do not articulate which religion(s) or religious tenet(s) conflict(s) with testing. *See* Doc. 14, generally.

6

27.     Plaintiffs are focused on medical, scientific, and political objections to testing. *See* Doc. 14, at ¶¶126–151; *see generally* Doc. 18; *see also generally* Doc. 21, Transcript of November 19, 2021 Proceeding.

28.     The bulk of Plaintiffs' allegations attack the efficacy of testing under the heading "PCR tests are not effective in detecting the SARS-COV-2 Virus." *See* Doc. 14, at ¶¶126–151; *see generally* Doc. 18.

29.     Moreover, Plaintiffs do not outright object to being tested, but insist all employees must be tested. "Plaintiffs believe, and therefore aver, that either all vaccinated and unvaccinated employees should be required to participate in the PCR or Antigen testing twice a week or none of them based upon the fact that all of Defendant's employees are capable of infecting employees, patients, or visitors with COVID-19." Doc. 14 at ¶181.

30.     According to the Court, "[i]f you are willing to be tested so long as the vaccinated are too, you are not religiously opposed to testing." Doc. 24 at Page 21.

     **(c)     Geisinger Engaged in the Interactive Process; Plaintiffs' Belief that the Regime of Testing in lieu of Vaccination is Not a Reasonable Accommodation Because Vaccinated People Should Also be Tested Destroys their Claim**

31.     Geisinger engaged in a robust evaluation of accommodation options as well as an interactive process with Plaintiffs and other employees on an individualized basis in accordance with the requirements under Title VII. *See*

Exhibit A, ¶¶18-32 (discussing Core Vaccine Exemption Team specifically developed to individually assess each exemption request (for vaccine or testing) and to interact with each employee to tailor potential accommodation(s)); *see also* Exhibit D, ¶¶9-13 (discussing extensive review of testing options by multidisciplinary Diagnostic Medicine Team).

32.     Plaintiffs' claim that "[s]ubmission to a PCR Test of Antigen Test twice a week is not a reasonable accommodation as it is only required of the individuals that requested a religious exemption to the EUA approved only vaccine. If the Defendants wish to protect their employees, patients, and visitors from possible COVID-19 infection they should require that both vaccinated and unvaccinated employees submit to a PCR or Antigen test twice weekly." Doc. 14 at ¶187.

33.     Plaintiffs further claimed "the Defendants actions in requiring only the unvaccinated employees that requested a religious exemption to the EUA approved only vaccines to submit to PCR or Antigen Tests twice weekly is not a reasonable accommodation." *Id.* at ¶189.

34.     Other than either not being tested, or requiring both unvaccinated and vaccinated people to be tested, Plaintiffs have failed to articulate what accommodation(s) they claim to have requested. *See* Doc. 14, generally.

## V.    Providing an Exemption to Testing Presents an Undue Hardship to Geisinger as a Matter of Law

35.    Geisinger relied on its experts at the forefront of the pandemic and concluded vaccination was critical for safety and that, in the absence of vaccination, periodic testing was the best noninvasive option.  *See* Exhibit B.

36.    Geisinger also relied on the advice of the CDC and the EEOC. *See id.*

37.    Research further proved that failure to test unvaccinated individuals risks increased infection rates and permitted the highest source of infections – unvaccinated individuals – to go on unabated.  *Id*.

38.    Moreover, Geisinger faced a staffing issue related to COVID-19 that threatened workplace safety and Geisinger's ability to provide quality care during a health crisis.  *See* Exhibit A, at ¶13.

39.    Finally, reported results from testing have been significantly effective in identifying COVID-19 infection and likely preventing the spread of such infection. *See* Exhibit C, at ¶¶10-16.

40.    According to the Court, "it's entirely rational for Geisinger to have chosen to test employees whose risk of being a vector they cannot reduce through vaccination." Doc. 24 at Page 25.

41.    "[I]t would be more than a de minimis cost for [Geisinger] to harbor employees that are both unvaccinated and untested." *Id.* at Page 22.

42.    "It would impose more than a de minimis burden on Geisinger to exempt these employees, who are far more likely to be a vector, from the testing requirement." *Id.* at 25.

43.    Plaintiffs suggested "exemption" of testing all employees would also pose more than a de minimis cost on Geisinger as a matter of law:

> But, as a matter of law (not back of the envelope math) this "exemption"—which isn't an exemption because it would merely expand the objected to program by 23,000 individuals—would undoubtedly impose more than a de minimis cost on Geisinger.

Doc. 24 at Page 26.

## VI.    Plaintiffs Have Failed to Exhaust Their Administrative Remedies

44.    In their Second Amended Complaint, Plaintiffs state in their "prayer for relief" that they have not yet filed with the EEOC, let alone received right to sue notices. *See* Doc. 14 at Prayer for Relief – C.

45.    At the proceeding on the preliminary injunction, "counsel for the [Plaintiffs] indicated that he was not aware of any [Plaintiffs] having filed with the EEOC or state commission, to say nothing of those employees having received a right to sue letter." Doc. 24 at Page 16.

46.    To date, Geisinger is not aware of any of the Plaintiffs filing in the EEOC or the PHRC.

Respectfully submitted,

BUCHANAN INGERSOLL & ROONEY PC

By: */s/Anthony (T.J.) Andrisano*
    Anthony (T.J.) Andrisano, Esq. (PA 201231)
    Jared L. Pickell, Esq. (PA 316796)
    Jacob J. Sulzer, Esq. (PA 313089)
    409 North Second Street, Suite 500
    Harrisburg, PA  17101
    Telephone: (717) 237-4800
    Fax: (717) 233-0852
    e-mail:  anthony.andrisano@bipc.com
    e-mail:  jared.pickell@bipc.com
    e-mail:  jacob.sulzer@bipc.com
    *Attorneys for Defendants*

Date:  December 3, 2021

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and complete copy of the foregoing document was served *via* ECF Filing on the following party:

Gregory A. Stapp, Esquire
Stapp Law, L.L.C.
153 West Fourth Street, Suite 6
Williamsport, PA 17701
gstapp@stapplaw.net


*/s Krista M. Kiger*
Krista M. Kiger
Paralegal


Dated:  December 3, 2021