## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVNIA

| | | |
|---|---|---|
| **THEODORE FEDEROFF, ET AL.,** individually and on behalf of all others similarly situated,<br><br>PLAINTIFFS,<br><br>v.<br><br>GEISINGER CLINIC, ET AL.,<br><br>DEFENDANTS. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | **Civil Case No. 4:21-01903-MWB** |

### MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiffs Theodore Federoff, et al. (collectively, "Plaintiffs"), by and through their undersigned counsel, Gregory A. Stapp, Esquire, hereby submit this Memorandum of Law in opposition to Defendants' Motion for Summary Judgment.

## **TABLE OF CONTENTS**

**I.   INTRODUCTION AND FACTUAL BACKGROUND**................................2

**II.  STANDARD OF REVIEW** ..........................................................6

**IV. ARGUMENT** .........................................................................12

   A.  Plaintiffs' Constitutional Claims Do Not Fail as a Matter of Law Because Geisinger is Not a State Actor....................................................12

   B.  Plaintiffs Have Made Out a *Prima Facie* Case for Their Title VII Religion-Based Claims as a Matter of Law.................................................13

   C.  Plaintiffs Have Made Out a *Prima Facie* Case for Their Title VII Religion-Based Claims as a Matter of Law.................................................15

   D.  Providing an Exemption to Testing Does Not Present an Undue Hardship to Geisinger as a Matter of Law. ...................................................16

   E.  Geisinger is Clearly Not Entitled to Summary Judgment on Plaintiffs' Title VII Claims Because Plaintiffs Have Failed to Exhaust Their Administrative Remedies. .........................................................................17

**V.  CONCLUSION** ......................................................................18

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Assiniboine & Sioux Tribes of Fort Peck Reservation*, 323 F.3d 767, 773-74 (9th Cir.2003) ............................................................................................................8

*Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986) ..........................................8, 18

*Garret v. City & Cnty. of S.F.*, 818 F.2d 1515, 1519 (9th Cir. 1987) ......................9

*Howell v. Liddell*, 2020 WL 949557 (U.S. Dist. Ct., E.D. California) ..................10

*Ryder v. Union Pacific Railroad Co.*, 945 F.3d 194 (5th Cir. 2019) ........................7

**Other Authorities**

Title VII of the Civil Rights Act ....................................................... 10, 12, 14, 18

Pennsylvania Human Relations Act ....................................................... 12, 15, 18

Pennsylvania Human Relations Act §955 ...................................................10

**Rules**

Fed. R. Civ. P. 56........................................................................................9

Fed. R. Civ. P. 56(a) ....................................................................................6

Fed. R. Civ. P. 56(c)(3) ................................................................................6

Fed. R. Civ. P. 56(d) ....................................................................................6

Fed. R. Civ. P. 56(f)......................................................................................9

## I.     INTRODUCTION AND FACTUAL BACKGROUND

On or about August 25, 2021, Defendants Geisinger Clinic, Geisinger Medical Center, Geisinger Health Plan, Geisinger Lewistown Hospital, Geisinger Wyoming Valley Medical Center, Geisinger System Services, Geisinger Health System, Geisinger Bloomsburg Hospital, Geisinger Community Medical Center, Geisinger Potsville Cancer Center, Geisinger Hazelton Cancer Center, Geisinger Mail Order Pharmacy, West Shore Advanced Life Support Services, Inc., and Geisinger System Financial Edits (collectively, "Defendants") implemented a vaccine mandate policy prior to the issuance of any executive order, mandate, or OSHA or CMS regulation. Despite the fact that Geisinger and its subsidiaries were under no obligation or legal duty to impose a vaccine mandate in August 2021, they required all their employees to submit to an EUA approved only vaccination or submit a religious or medical exemption.

When Geisinger announced the vaccine mandate, employees were advised that medical exemptions would not be granted unless they were allergic to an ingredient or ingredients in the EUA approved only vaccines.  It should be noted that the Food and Drug Administration has now applied to the Northern District Court of Texas to be given approximately seventy-five (75) years in which to disclose all the documents related to a FOIA request regarding the ingredients of the Pfizer BioNtech vaccine.  It should also be noted that during the implementation of the

vaccine mandates, peer review studies continue to be released regarding the data from which the EUA approved only vaccines were implemented.  Namely, J. Bart Classen issued a peer review study in the magazine, *Trends in Internal Medicine*, which reviewed the scientific data of each of the EUA approved only vaccines; Moderna, Pfizer, and Janssen.  Dr. Classen, an immunotherapy physician, reviewed the data using the appropriate scientific data endpoint. (See Dr. Classen's study attached hereto at **Exhibit A**).  Dr. Classen's study concluded, "Based on this data it is all but a certainty that mass COVID-19 immunization is hurting the health of the population in general.  Scientifice principles dictate that the mass immunization with COVID-19 vaccines must be halted immediately because we face a looming vaccine induced public health catastrophe."  Despite peer review studies of this nature and despite the fact that Geisinger was under no obligation to impose a vaccine mandate, they required their employees to receive one of the EUA approved only vaccines or be fired.

During the process of reviewing the religious and medical exemptions filed by employees in September and October 2021, additional information continued to develop regarding the efficacy of the vaccines. Now, the CDC Director, Dr. Rochelle Walensky, has stated that the COVID-19 vaccines are not able to prevent individuals from being infected with COVID-19 and/or from transmitting the COVID-19 virus to other individuals. (See the video initially posted by Dr. Robert Malone on Twitter

in October 2021, now copied to this site - https://web.telegram.org/z/#1541599283).

Former CDC Director, Robert Redfield, has stated that during one 6 to 8 week period

40% of the individuals who died with COVID-19 in the State of Maryland were fully

vaccinated.   The World Health Organization Chief Scientist, Dr. Soumya

Swaminathan, has also stated that we don't have enough evidence to be confident

that the COVID-19 vaccines that are currently available prevent people from getting

infected with COVID-19 or prevent people from transmitting COVID-19 to other

individuals.   Despite all this information that has been released, the Defendants

continued to require that their employees either receive the vaccine or receive a

religious or medical exemption.

Each of the Plaintiffs in this action did apply for a religious exemption to

the vaccine mandate and were informed that they had received "conditional

approval."   Weeks after the conditional approval, each of the Plaintiffs were advised

that in order to continue their employment with the Defendants they would be

required to submit to either a PCR test or Antigen test twice weekly and that they

would be required to quarantine for fourteen (14) days if they were exposed to an

individual who tested positive for COVID-19.   They were also advised that if they

were required to quarantine, they would not receive paid time off, unlike the

vaccinated employees.   Following the filing of the Complaint in this matter, the

Defendants have now modified the PTO policy to pay for time off to unvaccinated

employees who are required to quarantine for fourteen (14) days as well.

In Geisinger's own email to their employees they state that only employees that have received the religious or medical exemption will be required to participate in testing twice weekly and be required to quarantine for fourteen (14) days if they are exposed to an individual with COVID-19.

When Plaintiffs received the conditional approval email, they requested a religious exemption from the requirement to test twice weekly. Each of the Plaintiffs religious exemption request to the testing was denied. The employees were advised that if they failed to test three times beginning on November 9, 2021, they would be discharged from their employment with the Defendants. After the filing of the Complaint, Plaintiffs were notified through the Case Management Conference that the dates of November 9 and November 11, 2021, would not be counted towards the three occurrences. Nonetheless, several of the Plaintiffs have now been discharged as a result of failing to perform testing on three (3) occasions.

This Court should be advised that 24 of the named Plaintiffs have now filed Pennsylvania Human Relations Commission and Equal Employment Opportunity Commission complaints as a result of their wrongful discharge, violation of their freedom of religion, and unreasonable accommodation. (Please see Plaintiff's Statement of Disputed Facts with attached exhibits).

At the time of the filing of the Complaint for Injunctive Relief, none of the

Plaintiffs had been discharged by the Defendants.  The purpose of the Complaint for Injunctive Relief was to enjoin the Defendants from discharging the Plaintiffs.  As several Plaintiffs have now been discharged, the Plaintiffs are pursuing their claims under Title VII and the Pennsylvania Human Relations Act for unreasonable accommodation and retaliation.

Plaintiffs are in receipt of the Motion for Summary Judgment and the Memorandum of Law.  Plaintiffs note that the Defendants are asking for the Complaint for Injunctive Relief to be dismissed in its entirety with prejudice; however, their motion does not address Count III related to unreasonable accommodations.

## II.    STANDARD OF REVIEW

The Motion for Summary Judgment is governed by Fed. R. Civ. P. 56(a) which states, "The court shall grant summary judgment **if the movant shows that there is no genuine dispute as to any material fact** and the movant is entitled to judgment as a matter of law."  Federal Rule of Civil Procedure 56(c)(3) states, "The court need consider only the cited materials, but it may consider other materials in the record."  Additionally, Fed. R. Civ. P. 56(d) states, "If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; **(2) allow time to obtain affidavits or declarations or to take discovery;** or (3) issue

any other appropriate order."

Plaintiffs would note that several of the members of the class have now been discharged and have filed actions in the appropriate administrative agencies in order to exhaust their administrative remedies. Plaintiffs have already requested that items of discovery be held with regards to the implementation of these vaccine mandates and the reasons, therefore. (See Plaintiff's letter to counsel for the Defendants attached at **Exhibit B**). Plaintiffs will obtain an expert report which will provide expert testimony that the PCR tests are not effective in determining whether an individual is suffering from COVID-19. Indeed, the CDC issued guidance in July of 2021 that PCR tests are no longer recommended for detection of COVID-19 without an additional method to differentiate COVID-19 from influenza. The CDC website states, "After December 31, 2021, CDC will withdraw the request to the U.S. Food and Drug Administration (FDA) for Emergency Use Authorization (EUA) of the CDC 2019-Novel Coronavirus (2019-nCoV) Real-Time RT-PCR Diagnostic Panel, the assay first introduced in February 2020 for detection of SARS-CoV-2 only…. CDC encourages laboratories to consider adoption of a multiplexed method that can facilitate detection and differentiation of SARS-CoV-2 and influenza viruses." (Please see citation from the CDC.gov website attached hereto at **Exhibit C**).

In reviewing whether there is a genuine dispute of material fact, a court

deciding a motion for summary judgment is to consider all the evidence in the record but refrain from making credibility determinations or weighing evidence. (*Ryder v. Union Pacific Railroad Co.*, 945 F.3d 194 (5th Cir. 2019)). A court deciding a motion for summary judgment must read all the evidence in the light most favorable to the nonmoving party and likewise draw all reasonable inferences in that party's favor (Fed. R. Civ. P. 56(a).  Id.  **If there is any genuine dispute of material fact a trier of fact may reasonably resolve in favor of either party, then the motion for summary judgment must be denied.  Id.  Based upon the Plaintiff's Statement of Disputed Facts, it is clear in the present case that there are numerous material factual disputes.**

In the *Celotex Corporation v. Catrett,* 106 S.Ct. 2548(1986) case, the Supreme Court stated, "Respondent commenced this action in September 1980, and petitioner's motion was filed in September 1981. The parties had conducted discovery, and no serious claim can be made that respondent was in any sense "railroaded" by a premature motion for summary judgment. Any potential problem with such premature motions can be adequately dealt with under Rule 56(f), which allows a summary judgment motion to be denied, or the hearing on the motion to be continued, if the nonmoving party has not had an opportunity to make full discovery. Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and

defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis." Id. at 2554.

The nonmoving party also must explain how the information sought could defeat summary judgment but does not have to prove the discovery it seeks necessarily will do so. "Summary judgment should not be granted while [an] opposing party timely seeks discovery of potentially favorable information." *Garret v. City & Cnty. of S.F.*, 818 F.2d 1515, 1519 (9th Cir. 1987) (citation omitted).

In the present case, the Plaintiffs filed the Complaint for Injunctive Relief seeking to enjoin the Defendants from discharging the Plaintiffs prior to exhausting their administrative remedies.  Indeed, part of the bases of the Defendants' Motion for Summary Judgment is the failure to exhaust administrative remedies.  As stated above, several of the Plaintiffs have now been discharged and are pursuing their administrative remedies.  As the Plaintiffs' complaints before the Pennsylvania Human Relations Commission and the Equal Employment Opportunity Commission have only just begun, the Defendants' summary judgment motion is **premature. The Defendant's motion reads more like a 12(b)(6) motion than a motion for summary judgment.**

The parties have yet to obtain any discovery with regards to the basis for Geisingers' actions and the implementation of its vaccine mandate.  The parties have

not yet been able to present any medical evidence which would establish the fact that the PCR tests or Antigen tests were not reliable for detecting the COVID-19 virus.  If the jury agrees with the expert testimony establishing that the PCR and Antigen tests were not effective to determine who was suffering from COVID-19 in 2021 and that the Defendants knew, or reasonably should have known this fact, then the jury may determine that the Defendants' only purpose in requiring the Plaintiffs to perform a swab up their noses twice a week was to punish them for failing to obtain the EUA approved only vaccines.  As this punishment was being meted out only to those who were requesting religious exemptions, it is a clear violation of Title VII of the Civil Rights Act and a violation of the Pennsylvania Human Relations Act §955.

In the *Howell v. Liddell*, 2020 WL 949557 (U.S. Dist. Ct., E.D. California) case, the District Court for the Eastern District of California ruled that the plaintiff's motion for summary judgment was filed prematurely because discovery did not close until February 20, 2020.  The Court went on to state, **"Plaintiff should be afforded reasonable access to potentially favorable information prior to the granting of summary judgment, because on summary judgment all inferences to be drawn to the underlying facts must viewed in the light most favorable to the party opposing the summary judgment motion."**  In the present case, a scheduling order has not yet  been entered, nor have the parties had time to begin

requesting discovery, much less to obtain any discovery from each of the Defendants named in the complaint. Plaintiffs have requested that information be maintained with regards to the reasons behind Geisinger's implementation of a vaccine mandate and their request for PCR/Antigen tests twice weekly.

Additionally, Plaintiffs believe, and therefore aver, that they will provide medical and scientific evidence that PCR/Antigen tests are not effective in detecting COVID-19 but are effective in possibly causing cancer to each of the individuals who are subjected to the test. Additionally, the Plaintiffs believe, and therefore aver, that discovery will show that the Defendants knew, or reasonably should have known, that the PCR/Antigen tests were ineffective and that they contained carcinogens that would harm the Plaintiffs. If Plaintiffs can prove that the Defendants knew, or reasonably should have known, that the PCR tests were ineffective, then Plaintiffs will argue that the request for Plaintiffs to submit to PRC tests twice a week was nothing more than an attempt to coerce and punish the Plaintiffs for requesting a religious exemption to the EUA approved only vaccines in clear violation of Title VII of the Civil Rights Act and the Pennsylvania Human Relations Act.

The Court must give Plaintiffs the inference that the above-stated facts are true when reviewing the Defendants' request for summary judgment. If the above facts are true, the Plaintiffs can establish a claim for violation of Title VII of the

Civil Rights Act and the Pennsylvania Human Relations Act at a jury trial of this matter. Plaintiffs that have been discharged would respectfully request that they be allowed to exhaust their administrative remedies prior to the dismissal to any of the claims cited in the Complaint for Injunctive Relief.

## IV. ARGUMENT

### A. Plaintiffs' Constitutional Claims Do Not Fail as a Matter of Law Because Geisinger is Not a State Actor.

Plaintiffs have not yet determined whether they intend to allege that Geisinger is a state actor with regards to their Complaint for Injunctive Relief or the current complaints of certain Plaintiffs before the Pennsylvania Human Relations Commission and the Equal Employment Opportunity Commission. Therefore, the Plaintiffs will not address the issue of Geisinger acting on behalf of the state at great length other than to state that the Defendant's motion for summary judgment is premature as discovery may reveal a sufficient nexus between the Defendants and the state or federal government.

Plaintiffs do intend to propound discovery to obtain any and all emails, memorandums, and letters of any kind from various government agencies such as the CDC, the National Institute of Health, the Pennsylvania Department of Health, as well as certain individuals such as Dr. Anthony Fauci, President Joseph Biden, and Governor Thomas Wolf. Plaintiffs provided a letter to Defendants' counsel requesting that any and all documentation of the nature described above be kept in

order to avoid spoliation of evidence in the ultimate trial of the claims made by the employees who have been discharged as result of the vaccine mandate and the conditional approval following their religious exemption requests.

In addition to the above-captioned argument, Plaintiffs also intend to determine why the level of funds paid to Geisinger and its affiliates exceeded over $120,000,000 from various federal and state governments.  (Please see attached documentation that Plaintiffs have obtained indicating the amounts paid to the Defendants related to the COVID-19 pandemic attached hereto at **Exhibit D**).  Again, Plaintiffs will be requesting any and all discovery related to how these funds were obtained and on what basis in order to determine whether Geisinger may be considered a state actor.

It is impossible at this early stage of litigation when no discovery has been obtained to determine whether there is a nexus between the Defendants actions and a state actor, such as the Pennsylvania Department of Health or the CDC.  The Plaintiffs have already obtained information that Geisinger and its affiliates received larger amounts of government funds from the federal and/or state government throughout the pandemic than similarly situated medical providers.

**B.    Plaintiffs Have Made Out a *Prima Facie* Case for Their Title VII Religion-Based Claims as a Matter of Law.**

In the case subjudice, Geisinger admits in their own correspondence to the

Plaintiffs that only those who requested religious or medical exemptions would be required to perform the PCR test twice weekly and to be quarantined in a manner differently than those who were vaccinated.   Therefore, by Geisinger's own admission, they are treating employees that were granted religious or medical exemptions to the vaccine mandate differently than those who were vaccinated. Geisinger's argument for this treatment is that it is a reasonable accommodation to the exemption request to the EUA approved only vaccines to ask that Plaintiffs be tested twice weekly with a PCR or Antigen test.   However, Plaintiffs have already argued and will provide evidence from a medical expert or experts at the time of trial in this matter to demonstrate that individuals with COVID-19 vaccinations are just as likely, if not more so, to spread COVID-19 among staff, visitors, and patients. Plaintiffs will also provide evidence during the trial of this case that the PCR tests and/or Antigen tests are not effective in determining whether a person has COVID-19.   If the PCR tests are not effective in determining COVID-19, there can be no purpose to this exercise other than to discriminate against those who requested a religious exemption to the vaccine itself by requiring them to **shove a carcinogen up their nose twice a week in an effort to possibly obtain cancer.**   These actions if proven at trial establish a clear violation of Title VII of the Civil Rights Act and the Pennsylvania Human Relations Act.

**C.      Plaintiffs Have Made Out a *Prima Facie* Case for Their Title VII Religion-Based Claims as a Matter of Law.**

Defendants' argument that Plaintiffs' request not to be subjected to the PCR tests is not religious in nature but actually scientific is specious.  Defendants seem to argue that simply because Plaintiffs are using logic in their thinking as to why they are requesting a religious exemption to the EUA approved only vaccines and then testing twice weekly that this means their request is not religious.  As stated in the affidavits that are attached to the Plaintiffs' Statement of Disputed Facts, each of the Plaintiffs have stated religious grounds for both their request to a religious exemption to the vaccine as well as to the PCR or Antigen tests.

The scientific argument that the PCR tests or Antigen tests are both ineffective at detecting the presence of COVID-19 simply establishes the fact for trial that the Defendants request to submit to testing twice weekly as an accommodation is not reasonable, but rather punishment for failing to submit to an EUA approved only vaccine.  If the test does not detect COVID-19 then it does not do what the Defendants state in their emails and correspondence which is to protect the safety of employees, patients, and visitors at the Defendants' facilities.

The Defendants state in the submissions to this Court that they were following CDC guidelines in their implementation of the vaccine mandate.  If this is the case then they must have known in July of 2021 that the CDC was withdrawing its request for EUA approval for the PCR tests on December 31, 2021. Therefore, the

Defendants knew when they required testing twice weekly that the tests were not going to be effective at determining who had COVID-19, which begs the question why the Defendants would require testing twice weekly as part of their "reasonable accommodation."

### D. Providing an Exemption to Testing Does Not Present an Undue Hardship to Geisinger as a Matter of Law.

Providing an exemption to testing actually saves the Defendants money, time, and resources. The Defendants already had a protocol in place prior to their implementation of their vaccine mandate policy in August 2021 which included employees being asked questions before coming to work on a given day and wearing PPE while at work. The evidence in this case will show that there was absolutely no need for the implementation of a vaccine mandate, and, that the vaccine mandate did not prevent the spread of COVID-19 at the Defendant's facilities.

Plaintiffs will provide medical expert or experts that will establish that the COVID-19 vaccines themselves do not help prevent an individual from contracting COVID-19, the COVID-19 vaccines do not help prevent individuals from transmitting COVID-19 to others, the COVID-19 vaccines do not prevent individuals from severe infection or death. (See the video citation referenced above.)

Based upon the expert testimony that will be provided in this case, the Plaintiffs will argue to the jury that there was no undue hardship on the Defendants

in granting the Plaintiff's religious exemptions to the EUA approved only vaccines due to the fact that the vaccines themselves are not effective in preventing individuals from contracting COVID-19 or from transmitting COVID-19 to others. The Plaintiffs will also provide expert testimony that will show that the PCR/Antigen tests are not effective in detecting if individuals have SARS-Cov-2 versus the influenza.  As such, there is no hardship on the Defendants in not requiring testing twice weekly.

Additionally, there is clearly no undue hardship to the Defendants in not requiring testing twice weekly of named Plaintiffs that work from home.  As indicated in the affidavits and complaints, some of the Plaintiffs work from home and are not exposed to patients, staff, or visitors.  Therefore, a jury can find that there would be no undue hardship on the Defendants in granting the Plaintiffs that work from home religious exemption without requiring testing twice weekly.

**E.   Geisinger is Clearly Not Entitled to Summary Judgment on Plaintiffs' Title VII Claims Because Plaintiffs Have Failed to Exhaust Their Administrative Remedies.**

Several of the named Plaintiffs have now been discharged as a result of the Defendant's policies, including but not limited to, the request to test twice weekly as an accommodation to the Plaintiffs' religious exemption request to the EUA approved only vaccines.  24 of the named Plaintiffs have now filed complaints with the PHRC that will be dual filed with the EEOC.  (See Plaintiff's Statement of

Disputed Facts with attached exhibits). Several of the 24 Plaintiffs that have filed complaints have also completed affidavits. (See Plaintiff's Statement of Disputed Facts with the Affidavits attached). Some of the affidavits were not able to be notarized due to the timing of Plaintiff's response, and, in at least one case, illness. Plaintiffs will provide the final notarized affidavits and additional affidavits for this court's review upon receipt of same.

Based upon these filings, there are numerous named Plaintiffs who would not be provided an opportunity to exhaust their administrative remedies if this Honorable Court were to dismiss the Plaintiffs' complaint in its entirety as the Defendants would undoubtedly argue res judicata against the Plaintiffs who have now been discharged and are exercising their rights under Title VII, the Pennsylvania Human Relations Act, and the Equal Protection Clause.

## V.    CONCLUSION

As the Supreme Court stated in the *Celotex* case, a motion for summary judgment should not be granted before the parties have even had an opportunity to participate in any discovery. Once the 24 Plaintiffs, and possibly others, have had an opportunity to exhaust their administrative remedies and bring their cases before this Honorable Court and the parties have completed discovery, the Defendants will have an opportunity to file another Motion for Summary Judgment should they choose to do so.

Presently, this Honorable Court may consider the complaints that have been filed with the PHRC and the EEOC and the affidavits of the Plaintiffs stating their religious exemption requests to both the EUA approved only vaccines and the testing twice weekly.  This court must view all the evidence in the light most favorable to the Plaintiffs, including but not limited to, the fact that the evidence will show that the Defendants knew, or reasonably should have known, that the PCR tests and Antigen tests were not effective in determining if an individual is actually suffering from an infection of COVID-19 at the time that they demanded that the Plaintiffs be subjected to them.  As such, the Defendants knew, or reasonably should have known that testing twice weekly was simply a punishment for the Plaintiffs who requested a religious exemption to the EUA approved only vaccines in violation of Title VII of the Civil Rights Act and the PHRA.

It is also premature to dismiss the Plaintiff's Equal Protection Clause claims against the Defendants as the Plaintiffs have not had an opportunity to perform discovery to establish a nexus between the state or federal government and the Defendants implementation of their vaccine mandate and/or their conditional approvals of the Plaintiff's religious exemption requests.

Dated: January 7, 2022                    **STAPP LAW, LLC**

By: _/s/ Gregory A. Stapp_____
     Gregory A. Stapp, Esquire
     Attorney No. 78247
     153 West Fourth Street, Suite 6
     Williamsport, PA 17701
     Tel. (570) 326-1077
     Email: gstapp@stapplaw.net
     *Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 7th day of January, 2022, I electronically filed the foregoing **Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment** with the Clerk of Court by using the CM/ECF filing system which will send notification of electronic copy to the following:

Anthony (T.J.) Andrisano, Esquire
Jill M. Lashay, Esquire
Jared L. Pickell, Esquire
Jacob J. Sulzer, Esquire
Buchanan Ingersoll & Rooney, PC
409 North Second Street, Suite 500
Harrisburg, PA 17101
Email: Anthony.andrisano@bipc.com
Email: Jill.lashay@bipc.com
Email: Jared.pickell@bipc.com
Email: Jacob.sulzer@bipc.com
*Counsel for Defendants*

> */s/ Gregory A. Stapp*
> Gregory A. Stapp, Esquire
> *Counsel for Plaintiffs*