# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHRISTINE LYNN FINKBEINER, individually and on behalf of all others similarly situated, | No. 4:21-CV-01903 |
| | (Chief Judge Brann) |
| Plaintiffs, | |
| v. | |
| GEISINGER CLINIC, *et al.*, | |
| Defendants. | |

## MEMORANDUM OPINION

### AUGUST 26, 2022

In November 2021, unvaccinated employees of various Geisinger Healthcare affiliates were given a choice: vaccinate, test, or lose your job. Today's suit involves some 100 that opted for the latter. Led by Christine Finkbeiner, these former Geisinger employees now argue that their dismissal was unlawful. Though contorted into six claims, each begins from the same premise: COVID-19 vaccines and tests are unsafe and ineffective.

Now, there is good reason to reject this statement outright. By this Court's estimation, Finkbeiner's evidence consist of nothing more than a collection of distorted statements and anti-vaccine hocus-pocus. But even if that was not the case—and indeed, suspended disbelief is the modus operandi at the pleading stage—her claims still fail. And for that reason, her complaint is dismissed with prejudice.

## I.    BACKGROUND

### A.    Procedural History

This dispute arose on November 8, 2021, when 73 Geisinger employees sought an injunction to stop their employer from requiring unvaccinated employees to be tested twice weekly for COVID-19.[1] After allowing the employees to amend their complaint two times and hearing oral arguments, I denied this request.[2] Shortly thereafter, Geisinger moved for summary judgment, seeking to dismiss the employees' claims for good.[3] But in May 2022, I denied this motion without prejudice, finding that it was premature, and instead instructed the employees to again amend their complaint.[4]

They did, filing a Third Amended Complaint, this time with Christine Finkbeiner as the lead plaintiff for a putative class of former employees.[5] Geisinger soon responded by moving to dismiss the case under Federal Rule of Civil Procedure 12(b)(6) or strike the class action allegations under Rule 12(f).[6] Finkbeiner failed to timely submit a brief in opposition.[7]

---

[1]    Doc. 1.

[2]    Doc. 10; Doc. 14; *Federoff. v. Geisinger Clinic*, 571 F. Supp. 3d 376 (M.D. Pa. 2021).

[3]    Doc. 26.

[4]    Doc. 36; Doc. 41.

[5]    Doc. 44.

[6]    Doc. 47.

[7]    Doc. 50; Doc. 54. The Court notes that Federal Rule of Civil Procedure 12(a) does not bear on this District's briefing schedule because, quite simply, "a brief is not a pleading." *Chavarriaga v. N.J. Dept. of Corrections*, 806 F.3d 210, 232 (3d Cir. 2015); *see also* Local Rule 7.6 ("Any party opposing any motion, other than a motion for summary judgment, shall file a brief in opposition within fourteen (14) days after service of the movant's brief, or, if a brief in support of the motion is not required under these rules, within seven (7) days after

## B.    Finkbeiner's Factual Allegations

This suit's precipitating event remains Geisinger's August 2021 decision to require that all employees be vaccinated unless eligible for a religious or medical exemption.[8] Soon after this policy was announced, Finkbeiner and the other named members in this suit requested religious exemptions.[9] As Finkbeiner's complaint does not detail this request, I will assume that her attached affidavit (from just a few months later) is representative. In it, she writes,

> I am a Christian and hold a sincere religious belief that I have a God given right to make my own choices regarding what is good or bad for me. The Bible says that man has free will and I am using my free will, granted to me by God, to reject the vaccine. I have faith in my own immune system and the ability for my own body to heal itself. With the 99% plus survival rate from Covid, I do not feel injecting chemicals into my body is a better choice than what my own immune system can do with fighting this virus, should I contract Covid.[10]

According to Finkbeiner's complaint, her request was conditionally approved, but weeks later, Geisinger told her that to keep her job she must take a PCR or Antigen COVID-19 test twice a week.[11] At the same time, she was also informed that she must quarantine for 14 days if she was exposed to someone who tested positive

---

service of the motion. Any party who fails to comply with this rule shall be deemed not to oppose such motion. Nothing in this rule shall be construed to limit the authority of the court to grant any motion before expiration of the prescribed period for filing a brief in opposition."). The Court nonetheless reviewed Finkbeiner's belated submission, *see* Doc. 56, and was unmoved.

[8]    Doc. 44 ¶ 13.

[9]    *Id.*

[10]    Doc. 44-1 at 3

[11]    Doc. 44 ¶ 14.

COVID-19 and could not take paid time off for this period.[12] (Geisinger, however, later reversed this policy, thus allowing quarantining unvaccinated employees to take paid time off.)[13]

After this announcement, Finkbeiner sought a further religious exemption.[14] And as the beliefs that underpinned this request are also not described in the complaint, I'll again turn to her affidavit. Here, Finkbeiner writes,

> I am a Christian and hold a sincere religious belief that I have a God given right to make my own choices regarding what is good or bad for me. The Bible says that man has free will and I am using my free will, granted to me by God, to reject the testing conditions placed on my approved religious exemption. I work from home and [am] required to test twice weekly using the at home kit – Quick Vue SARS Antigen Test. Per the information on the packaging, it states: The QuickVue SARS Antigen Test has not been FDA cleared or approved but has been authorized by the FDA under an Emergency Use Authorization (EUA). I believe it is not an emergency for Geisinger to require an employee who works from home, with zero patient/employee contact to test in this with manner with a product that is not FDA approved. This violates my sincerely held religious belief and I believe testing in this manner is a bad choice for my health and body. I believe there are chemicals/carcinogens associated with the swab and testing material. I'm afraid of the side effects and potential future health risks these chemicals may cause with this repetitive use. I believe this testing is toxic and it's only EUA approved, therefore I do not want to be part of an experiment.[15]

---

[12]  *Id.*
[13]  *Id.*
[14]  *Id.* ¶ 19.
[15]  Doc. 44-1 at 4.

But Geisinger denied Finkbeiner's request, instead telling her that it would take her refusal as a voluntary resignation.[16] And so it went. By early December 2021, she was out of a job.[17]

## II.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), the Court may dismiss a complaint, in whole or in part, if the plaintiff has failed to "state a claim upon which relief can be granted." Following the landmark decisions *Bell Atlantic Corp. v. Twombly*[18] and *Ashcroft v. Iqbal*,[19] "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[20] In its assessment, the Court must "accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the plaintiff]."[21] Still, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions."[22] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[23]

---

[16]   Doc. 44 ¶ 16.

[17]   *Id.* ¶ 20.

[18]   550 U.S. 544 (2007).

[19]   556 U.S. 662 (2009).

[20]   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[21]   *Phillips v. Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008) (Nygaard, J.).

[22]   *Iqbal*, 556 U.S. at 678; *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (Nygaard, J.) ("After *Iqbal*, it is clear that conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss.").

[23]   *Iqbal*, 556 U.S. at 678.

## III.   ANALYSIS

Though spanning six counts, Finkbeiner's claims can be boiled down to three categories. Two allege violations of federal and state religious antidiscrimination laws. Two others center on constitutional violations. While still two more allege tortious infliction of emotional distress.[24] Each are addressed in turn.

### A.   Title VII Religious Discrimination Claims

In Counts I and III, Finkbeiner alleges that Geisinger's testing requirement violates Title VII of the Civil Rights Act and the Pennsylvania Human Relations Act.[25] She contends that Geisinger failed to offer her a reasonable accommodation to the vaccine mandate because PCR and Antigen tests are ineffective, carcinogenic,

---

[24]   Finkbeiner's complaint also references the Nuremberg Code and 21 U.S.C. § 360bbb-3(e)(1)(A)(ii)(III)'s emergency use authorization designation. Doc. 44 ¶¶ 1, 13, 25, 34, 36–38, 47, 49, 53, 71–72, 81–83, 85–86, 89, 91, 93, 101, 105. Although neither are fashioned as independent causes of action, any such attempt would be futile. Courts have been uniform that the statute has no bearing in cases involving employer mandates. *See, e.g.*, *Klaassen v. Trustees of Indiana Univ.*, 549 F. Supp. 3d 836, 870 (N.D. Ind. 2021), *aff'd*, 7 F.4th 592 (7th Cir. 2021). What's more, when Finkbeiner refers to the vaccines as being "EUA approved only," she is simply wrong—and has been since the suit was first filed; the two-dose Pfizer-BioNTech vaccine has been full approved by the Food & Drug Administration since August 23, 2021. *Burcham v. City of Los Angeles*, 562 F. Supp. 3d 694, 707–08 (C.D. Cal. 2022); *Rhoades v. Savannah River Nuclear Solutions, LLC*, 574 F. Supp. 3d 322, 344–45 (D.S.C. 2021); *Valdez v. Grisham*, 559 F. Supp. 3d 1161, 1171–72 (D.N.M. 2021). Courts have been similarly dismissive of base analogies between the forced medical experiments of the Nazi regime and the choice that Finkbeiner, and other workers, have been given. *Anderson v. United Airlines, Inc.*, 577 F. Supp. 3d 1324, 1335 (M.D. Fla. 2021); *Bridges v. Houston Methodist Hosp.*, 543 F. Supp. 3d 525, 528 (S.D. Tex. 2021); *Johnson v. Brown*, 567 F. Supp. 3d 1230, 1248 (D. Or. 2021); *Doe v. Franklin Square Union Free Sch. Dist.*, 568 F. Supp. 3d 270, 293 (E.D.N.Y. 2021); *McCutcheon v. Enlivant ES, LLC*, 2021 WL 5234787, at *3 (S.D.W.V. Nov. 9, 2021); *Miranda v. Alexander*, 2022 WL 832576, at *16 (M.D. La. Feb. 24, 2022); *Legaretta v. Macias*, 2022 WL 1443014, at *13 (D.N.M. May 6, 2022); *Johnson v. Tyson Foods*, 2022 WL 2161520, at *10 (W.D. Tenn. June 15, 2022).

[25]   Doc. 44 ¶¶ 59, 60, 80.

only approved for emergency use in the United States, and thus solely serve to punish her for her religious beliefs.[26]

To establish a *prima facie* case under these laws,[27] plaintiffs must show "that (1) they held a sincere religious belief that conflicted with a job requirement, (2) they informed their employer of the conflict, and (3) they . . . [were] disciplined for failing to comply with the conflicting request."[28] But the "*prima facie* case is 'an evidentiary standard, not a pleading requirement.'"[29] Plaintiffs are not required to establish each element to survive a motion to dismiss; they must simply "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of [their] claims."[30] Geisinger, however, argues that Finkbeiner's allegations show that her stated beliefs about testing are medical, not religious, and therefore cannot support a religious discrimination claim. The Court agrees.

In this circuit, to determine whether a belief is religious in nature, courts look to the three *Africa* factors: whether the belief (1) "address[es] fundamental and ultimate questions having to with deep and imponderable matter," (2) is "comprehensive in nature," and (3) is "accompanied by certain formal and external

---

[26]   *Id.* ¶¶ 45, 46, 47, 63, 81.

[27]   Finkbeiner's claims under Title VII and the Pennsylvania Human Relations Act are coextensive and are thus considered under the same framework. *Federoff*, 571 F. Supp. 3d at 391; *see also Prise v. Alderwoods Grp. Inc.*, 657 F. Supp. 2d 564, 584 (W.D. Pa. 2009); *Pa. State Univ. v. Pa. Hum. Rels. Comm'n*, 505 A.2d 1053 (Pa. 1986).

[28]   *Id.* at 387 (quoting *Fallon v. Mercy Cath. Med. Ctr*, 877 F.3d 487, 490 (3d Cir. 2017)) (internal alterations and quotations omitted).

[29]   *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016) (quoting *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 510 (2002)).

[30]   *Id.*

signs."[31] Simply put, Finkbeiner's statement—which centers on her free will and belief that Covid-19 vaccines and tests are harmful and unnecessary—fails to establish sincere religious opposition under this framework.[32] To the extent that it addresses any of the three *Africa* factors, it touches on the second. But even here, problems abound.

To start, her belief that she has a "God given right to make [her] own choices"[33]—which, implicitly, her employer must unfailingly respect—would amount to "a blanket privilege" and a "limitless excuse for avoiding all unwanted . . . obligations."[34] Though fungible enough to cover anything that Finkbeiner trains it on, this belief "is an 'isolated moral teaching' . . . not a comprehensive system of beliefs about fundamental or ultimate matters."[35]

Beyond that, her statement only reinforces that her opposition stems from her medical beliefs. As Finkbeiner writes, she believes,

- that "it is not any emergency for Geisinger to require an employee who works from home, with zero patient/employee contact to test in this manner";

- that "there are chemicals/carcinogens associated with swab and testing material";

---

[31] *Brown v. Children's Hosp. of Phila.*, 794 Fed. App'x 226, 227 (3d Cir. 2020) (quoting *Fallon*, 877 F.3d at 491) (internal quotations omitted); *see generally Africa v. Pennsylvania*, 662 F.2d 1025, 1030, 1031 (3d Cir. 1981).

[32] Doc. 44-1 at 3–4.

[33] *Id.*

[34] *Africa*, 662 F.2d at 1030, 1031.

[35] *Fallon*, 877 F.3d at 492.

- that "testing is toxic"—making her "afraid of the side effects and potential future health risks these chemicals may cause"; and

- that "testing in this manner is a bad choice for [her] health and body."[36]

In sum, "it would be a step too far to count everything [Finkbeiner] believes about healthy living as a religious practice."[37]

Counts I and III are therefore dismissed with prejudice.

### B.    Constitutional Claims

Like past complaints, the Third Amended Complaint also alleges that Geisinger's vaccinate-or-test requirement is unconstitutional. Finkbeiner first contends that by treating vaccinated and unvaccinated employees differently, Geisinger violated the Equal Protection Clause of the 14th Amendment.[38] And in a later count, she also claims that this same policy violates the Due Process Clause of the Fifth and Fourteenth Amendments and Article I, Section 3 of the Pennsylvania Constitution, thus entitling her to a recovery under 42 U.S.C. § 1983.[39] Both theories have substantial defects. But here, there is no need for analysis past the first step. To make out a constitutional or § 1983 claim, Finkbeiner must allege facts showing that Geisinger is a state actor.[40] And she has not.

---

[36]    Doc. 44-1 at 4.

[37]    *Geerlings v. Tredyffrin/Easttown Sch. Dist.*, 2021 WL 4399672, at *20–21 (E.D. Pa. Sept. 27, 2021).

[38]    Doc. 44 ¶¶ 70–72.

[39]    *Id.* ¶¶ 107–122.

[40]    *See, e.g., Lugar v. Edmondson Oil. Co.*, 457 U.S. 922, 937 (1982) ("Our cases have accordingly insisted that the conduct allegedly causing the deprivation of a federal right be

For the law underlying each count, there are differences in verbiage. Under the Fourteenth Amendment, "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws," while § 1983 "provides a remedy for deprivations of rights secured by the constitution and laws of the United States when that deprivation takes place 'under color of any statute, ordinance, regulation, custom, or usage of any State . . . .'"[41] But as the Supreme Court emphasized in *Lugar v. Edmondson Oil Co.*, the analysis for each is "identical," so I'll consider the counts together.[42]

Subjecting a private entity to constitutional scrutiny requires that there be "such a close nexus between the State and the challenged action that seemingly private behavior may be treated as that of the state itself."[43] In assessing whether this nexus exists, courts in this circuit look to three broad tests:

(1) whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state; (2) whether the private party has

---

fairly attributable to the State. These cases reflect a two-part approach to this question of 'fair attribution.' First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible. . . . Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor. This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State.")

[41]  *Id.* at 929–30. Despite referencing the Fifth Amendment, Finkbeiner has not articulated a *Bivens* claim. Doc. 44 ¶¶ 106–122; *see generally Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) (finding that a § 1983-like private right of action exists for constitutional violations committed by federal officials); *see also Davis v. Passman*, 442 U.S. 228, 248–49 (1979) (holding that violations of the Fifth Amendment's Due Process Clause can be remedied through a *Bivens* action). But if she had, this action would similarly fail because Geisinger is not a state actor.

[42]  457 U.S. at 935. *But see id.* n.18 (noting two caveats to this general rule).

[43]  *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (quoting *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005)).

acted with the help of or in concert with state officials; and (3) whether
the state has so far insinuated itself into a position of interdependence
with the acting party that it must be recognized as a joint participant in
the challenged activity.[44]

Finkbeiner's complaint touches on the first and the second.

To start, proving that a private entity "performed a function that has
traditionally be the exclusive province of the state" is no small task.[45] As the United
States Court of Appeals for the Third Circuit has noted, this first test "imposes a
rigorous standard that is rarely satisfied, for while many functions have been
traditionally performed by government, very few have been exclusively reserved to
the State."[46] That is the case here.

Finkbeiner begins from the premise that only Pennsylvania's Department of
Health and its Governor have the power to mandate a vaccine.[47] For support, she
first cites to Pennsylvania laws that task the Department of Health with "protect[ing]
the health of the people of this Commonwealth[] and . . . determin[ing] and
employ[ing] the most efficient and practical means for the prevention and
suppression of disease."[48] She then asserts that in August 2021, Geisinger

---

[44]   *Id.* (internal quotations omitted).
[45]   *Robert S. v. Stetson Sch., Inc.*, 256 F.3d 159, 165 (3d Cir. 2001).
[46]   *Id.* at 165–66 (quoting *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1142 (3d Cir. 1995) and
       *Flagg Bros. v. Brooks*, 436 U.S. 149, 158 (1978)) (internal alterations, citations, and
       quotations omitted).
[47]   Doc. 44 ¶ 114.
[48]   *Id.* ¶ 115 (citing 71 P.S. § 532(a)); *id.* ¶ 116 (citing 71 P.S. § 1403(a)).

implemented a vaccine mandate.[49] And as a result of this action, she contends that Geisinger therefore assumed the role of the state and acted under color of state law.

But this syllogism begins from a false premise. The Pennsylvania Department of Health's duty to protect the health of the people and employ the most effective methods of disease suppression is not exclusive. The statute's plain language provides no such limitation.[50] And Finkbeiner's allegations in no way suggest that healthcare providers are, or ever have been, prohibited from doing more than the state-mandated minimum to protect their patients and staff.[51]

Finkbeiner does no better at the second step. Here, she alleges that Geisinger "acted in concert with federal officials by implementing the vaccine mandate as a result of the CDC's recommendations and the recommendations of other federal officials such as Dr. Anthony Fauci."[52] But "[a]ction taken by private entities with the mere approval or acquiescence of the State is not state action."[53] Plaintiffs must

---

[49]  *Id.* ¶ 117.

[50]  *See Kach*, 589 F.3d at 647 (finding that nothing in the "plain language" of the statute creating the Office for State Schools "suggest[ed] that school security is the exclusive province of the state").

[51]  The complaint also alleges that Geisinger received over $120,000,000 in state and federal funding to combat the COVID-19 pandemic. Doc. 44 ¶ 42. To the extent that this factual allegation is intended to support Finkbeiner's state actor claim, it falls short. *See Blum v. Yaretsky*, 457 U.S. 991, 1005–12 (1982) (rejecting a state actor claim against a private nursing home that received 90% of its funding from the state); *Rendell-Baker v. Kohn*, 457 U.S. 830, 839–42 (1982) (rejecting a state actor claim against a private school that received 90% of its funding from the state).

[52]  Doc. 44 ¶ 119.

[53]  *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 52 (1999).

show that the government is indeed responsible for the conduct.[54] So even if the Court takes Finkbeiner's allegation—that she "believes and therefore avers that Geisinger was working with the federal government in implementing the EUA approved only 'vaccine' mandate"[55]—and expands it to testing, her complaint still fails to show that the government was responsible for the conduct. Indeed, its opening paragraph—which begins, "Without any official mandate from the federal or state government, Geisinger mandated . . . ."[56]—and its admission that the mandate resulted from a recommendation suggest quite the opposite.[57]

Counts II and VI are therefore dismissed with prejudice.

### C.   State Tort Law Claims

Finally, Finkbeiner newly alleges that Geisinger's conduct constituted intentional or negligent infliction of emotional distress under Pennsylvania law. She asserts that Geisinger caused her emotional distress by implementing its policy, though it knew or should have known that vaccines and tests were unsafe and ineffective.[58] But these allegations, even if accepted as true, provide no relief.

To state a claim for intentional infliction of emotional distress, plaintiffs must allege facts showing "that the defendant's conduct: (1) was intentional or reckless;

---

[54]   *Borrell v. Bloomsburg Univ.*, 870 F.3d 154, 160 (3d Cir. 2017) (citing *Blum*, 457 U.S. at 1004).

[55]   Doc. 44 ¶ 36 (emphasis added); *see also id.* ¶¶ 37–38.

[56]   *Id.* ¶ 1.

[57]   *Id.* ¶ 119.

[58]   *Id*. ¶¶ 87–101, 102–105.

(2) was extreme and outrageous; (3) actually caused the distress; and (4) caused distress that was severe."[59] And in doing so, they must show that the conduct was "so extreme in nature as to go beyond all possible bounds of decency such that it would be regarded as utterly intolerable to civilized society" and "demonstrate physical injury or harm," supported by "competent medical evidence."[60]

Finkbeiner fails to meet this standard. To begin with, she only alleges that she "suffered great emotional distress" because of Geisinger's vaccinate-or-test requirement—failing to back this conclusory assertion with medical evidence of a physical harm.[61] This deficiency alone would sink her claim.

But even if she had met this requirement, it is not extreme and outrageous for a health system to present employees with the choice of a jab, a swab, or their job. Intentional infliction of emotional distress claims require plaintiffs to go beyond showing "that the defendant has acted with an intent which is tortious or even criminal, or that [it] has intended to inflict emotional distress, or even that [its] conduct has been characterized by malice, or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort."[62] And while Finkbeiner's allegations on this front strain credulity, if the Court were to credit them, it's not as

---

[59]   *Regan v. Township of Lower Merion*, 36 F. Supp. 2d 245, 251 (E.D. Pa. 1999).

[60]   *Lawson v. Pa. SPCA*, 124 F. Supp. 3d 394, 409 (E.D. Pa. 2015); *K.A. ex rel. J.A. v. Abington Heights Sch. Dist.*, 28 F. Supp. 3d 356, 376 (M.D. Pa. 2014) (Mariani, J.).

[61]   Doc. 44 ¶ 88.

[62]   *Rorke v. Aubrey Alexander Toyota*, 2016 WL 7404617, at *8 (M.D. Pa. Dec. 22, 2016) (internal quotations omitted).

though she was vaccinated or tested against her will. There was no gun-to-the-head, needle-to-the-shoulder, or swab-to-the-nostril moment. She refused and was fired. At most, this would amount to a wrongful dismissal. And that does not meet the "utterly intolerable" standard.

To state a claim for negligent infliction of emotional distress, meanwhile, plaintiffs must first plead a prima facie case of negligence. Once they have done that, they must then establish that they either (1) suffered a physical injury that caused the emotional distress; (2) suffered no injury, but experienced emotional distress from having been in the "zone of danger"; (3) witnessed an accident that seriously injured a close family member; or, under the most, and perhaps an overly, expansive reading of current Pennsylvania law, (4) had a special relationship with the defendant that included in it an implied duty to care for their emotional well-being.[63]

Finkbeiner meets neither requirement. Her allegations contain no reference to Geisinger having breached a duty that caused them damages; nor do they touch on the categories of claims where the Pennsylvania Supreme Court permits recovery for emotional harm. Across three paragraphs, she simply repeats the name of the tort, without regard to its elements. In the first two paragraphs, she asserts that Geisinger "should have known" that its vaccinate-or-test policy "would cause emotional distress"; while in the final paragraph, she concludes that Geisinger had

---

[63] *See Humphries v. Pa. State Univ.*, 2021 WL 4355352, at *20–22 (M.D. Pa. Sept. 24, 2021).

indeed "negligently inflicted emotional distress."[64] These are not even "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . ."[65]

Counts IV and V are therefore also dismissed with prejudice.

## IV.   CONCLUSION

While cloaked in the language of religious discrimination, due process, equal protection, and tortious infliction of emotional distress, Finkbeiner's complaint makes plain that she's after a modern-day Scopes trial. She believes that COVID-19 vaccines and tests are a hoax. And she wants this Court to vindicate her views, overturn Geisinger's policy, and find that she and her colleagues should have been allowed to work—unvaccinated and untested. But courts cannot simply weigh-in on every issue an employee has with its employer's policy. There must be a legal hook. And she has not provided one.

An appropriate Order follows.


BY THE COURT:


*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[64]   Doc. 44 ¶¶ 102–105.
[65]   *Iqbal*, 556 U.S. at 678.